No. 22-14031-DD

---



**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

---

MICHAEL J. POLELLE,

*Plaintiff-Appellant*

*v.*

*CORD BYRD,* in his capacity as Secretary of State of Florida, and RON TURNER,

in his capacity as Supervisor of Elections for Sarasota County, Florida,

*Defendant-Appellees*

Appeal from the United States District Court for the Middle District of Florida

No. 8:22-cv-1301-SDM-AAS

---

**APPELLANT'S APPENDIX**

---

Michael J. Polelle,  Pro Se

1102 Ben Franklin Dr, Unit 511

Sarasota, Florida  34236

(941) 388-1840   mpolel2@uic.edu

# INDEX OF APPENDIX

**Docket/Tab No.**

District Court Docket Sheet ………………………..    A

Complaint    …………………….    1

Amended Motion to Dismiss Complaint filed by ………..    12
Ron Turner

Amended Motion to Dismiss Complaint filed by ……………13
Cord Byrd

Response to Amended Motions to Dismiss Complaint . . . . . . 14

Order Granting Amended Motions to Dismiss  . . . . . . . .    22

Certificate of Service

2255, CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: <u>8:22−cv−01301−SDM−AAS</u>

| | |
|---|---|
| Polelle v. Byrd et al | Date Filed: 06/06/2022 |
| Assigned to: Judge Steven D. Merryday | Date Terminated: 11/03/2022 |
| Referred to: Magistrate Judge Amanda Arnold Sansone | Jury Demand: None |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 441 Civil Rights: Voting |
| | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

**Michael J. Polelle**      represented by   **Michael J. Polelle**
1102 Ben Franklin Drive
Unit 511
Sarasota, FL 34236
941−388−1840
PRO SE

V.

**<u>Defendant</u>**

**Cord Byrd**      represented by   **Ashley E. Davis**
*solely in his official capacity as Florida*      Florida Department of State
*Secretary of State*      500 S Bronough St Ste 100
Tallahassee, FL 32399−0250
850−245−6531
Email: ashley.davis@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Ron Turner**      represented by   **Ashley Elizabeth Gaillard**
*solely in his official capacity as*      Bentley Goodrich Kison
*Supervisor or Elections for Sarasota*      783 S Orange Ave
*County*      Sarasota, FL 34236
941−556−9030
Email: agaillard@bgk.law
*ATTORNEY TO BE NOTICED*

**Morgan R. Bentley**
Bentley & Bruning, PA
783 S Orange Ave Ste 300
Sarasota, FL 34236
941−556−9030
Fax: 941/312−5316
Email: mbentley@bentleyandbruning.com
*ATTORNEY TO BE NOTICED*

1

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/06/2022 | 1 | | COMPLAINT *(Declaratory and Injunctive Relief Requested)* against Cord Byrd, Ron Turner Filing fee $402.00, receipt number TPA66623 filed by Michael J. Polelle. (Attachments: # 1 Civil Cover Sheet)(MCB) (Entered: 06/06/2022) |
| 06/06/2022 | 2 | | SUMMONS issued as to Cord Byrd, Ron Turner. (MCB) (Entered: 06/06/2022) |
| 06/07/2022 | 3 | | NOTICE of Local Rule 1.07(c)and Local Rule 3.02(a)(2).<br><br>−**Local Rule 1.07(c)** requires lead counsel to *promptly* file a **Notice of a Related Action** that identifies and describes any related action pending in the Middle District or elsewhere.<br><br>−**Local Rule 3.02(a)(2)** requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge.<br><br>**(Signed by Deputy Clerk). (DAY) (Entered: 06/07/2022)** |
| 06/20/2022 | 4 | | NOTICE of Appearance by Ashley E. Davis on behalf of Cord Byrd (Davis, Ashley) (Entered: 06/20/2022) |
| 06/23/2022 | 5 | | RETURN of service executed on 6/17/2022 by Michael J. Polelle as to Cord Byrd. (CTR) (Entered: 06/23/2022) |
| 06/27/2022 | 6 | | RETURN of service executed on 6/17/2022 by Michael J. Polelle as to Cord Byrd. (Attachments: # 1 Mailing Envelope)(CTR) (Entered: 06/27/2022) |
| 07/05/2022 | 7 | | RETURN of service executed on 6/22/22 by Michael J. Polelle as to Ron Turner. (Attachments: # 1 Mailing Envelope)(LNR) (Entered: 07/06/2022) |
| 07/08/2022 | 8 | | MOTION to Dismiss Complaint by Cord Byrd. (Davis, Ashley) (Entered: 07/08/2022) |
| 07/12/2022 | 9 | | First MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) (Entered: 07/12/2022) |
| 07/12/2022 | 10 | | ***TERMINATED−COUNSEL NOTIFIED TO RE−FILE WITH THE CORRECT EVENT CODE*** MOTION to Alter Judgment , MOTION to Appoint Counsel , MOTION to Appoint ad Litem , First MOTION to Supplement 9 First MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) Motions referred to Magistrate Judge Amanda Arnold Sansone. Modified on 7/13/2022 (CTR). (Entered: 07/12/2022) |
| 07/13/2022 | 11 | | ***TERMINATED−COUNSEL NOTIFIED TO RE−FILE WITH CORRECT EVENT CODE***Amended MOTION to Vacate, Set Aside or Correct Sentence (2255) filed by Ron Turner.(Bentley, Morgan) Modified on 7/13/2022 (CTR). (Entered: 07/13/2022) |

| 07/13/2022 | 12 | | Amended MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) (Entered: 07/13/2022) |
|---|---|---|---|
| 07/14/2022 | 13 | | Amended MOTION to Dismiss Complaint by Cord Byrd. (Davis, Ashley) (Entered: 07/14/2022) |
| 07/18/2022 | 14 | | RESPONSE in Opposition re 13 Amended MOTION to Dismiss Complaint , 12 Amended MOTION to Dismiss Complaint filed by Michael J. Polelle. (BD) (Additional attachment(s) added on 7/21/2022: # 1 Signed Response, # 2 Mailing Envelope) (CTR). (Entered: 07/18/2022) |
| 07/18/2022 | 15 | | **ORDER denying as moot 8, 9—motions to dismiss. Signed by Judge Steven D. Merryday on 7/18/2022. (GG)** (Entered: 07/18/2022) |
| 08/02/2022 | 16 | | CORPORATE Disclosure Statement by Cord Byrd. (Davis, Ashley) (Entered: 08/02/2022) |
| 08/02/2022 | 17 | | CERTIFICATE of interested persons and corporate disclosure statement by Ron Turner. (Gaillard, Ashley) (Entered: 08/02/2022) |
| 08/02/2022 | 18 | | ***TERMINATED—DISCOVERY***Witness List by Ron Turner. (Gaillard, Ashley) Modified on 8/3/2022 (CTR). (CTR). (Entered: 08/02/2022) |
| 08/02/2022 | 19 | | CERTIFICATE of interested persons and corporate disclosure statement (unsigned) by Michael J. Polelle. (BD) (Entered: 08/03/2022) |
| 08/05/2022 | 20 | | CERTIFICATE of interested persons and corporate disclosure statement by Michael J. Polelle.(signed) (Attachments: # 1 Mailing Envelope)(CTR) (Additional attachment(s) added on 8/16/2022: # 2 Cover Letter) (CTR). (Entered: 08/05/2022) |
| 08/16/2022 | 21 | | ENTERED IN ERROR(CTR)(CTR). (Entered: 08/16/2022) |
| 11/03/2022 | 22 | | **ORDER granting 12, 13—motions to dismiss; dismissing the action. Signed by Judge Steven D. Merryday on 11/3/2022. (WBW)** (Entered: 11/03/2022) |

# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

MICHAEL J. POLELLE

    *Plaintiff*

    V.

CORD BYRD, solely in his official capacity

as Florida Secretary of State

    and

RON TURNER, solely in his official capacity

as Supervisor of Elections for Sarasota

County

    *Defendants*

8:22-cv-1301-SDM-AAS

CASE NO _____

**COMPLAINT**



4

## DECLARATORY AND INJUNCTIVE RELIEF REQUESTED

## CHALLENGE TO THE CONSTITUTIONALITY OF § 101.021 FLA. STAT. (2021) AND ART.VI § 5(B) OF THE FLORIDA CONSTITUTION

### NATURE OF THE CASE

1.  The Plaintiff, Michael J. Polelle, files this Complaint under 42 U.S.C. § 1983 against Defendants, Cord Byrd, Florida Secretary of State, and Ron Turner, Supervisor of Elections for Sarasota County, Florida solely in their official capacities and requests declaratory and injunctive relief.

### JURISDICTION AND VENUE

2.  This court has jurisdiction under §§ 1331 and 1343(3) of the Federal Rules of Civil Procedure.

3. Venue is proper under 42 U.S.C. § 1391(b) (1) (2).

### THE PARTIES

4. Michael J. Polelle, an emeritus professor of law, is a citizen of Florida and a resident of the City of Sarasota in the County of Sarasota.

5. Cord Byrd, as Secretary of State for Florida, oversees primary and general elections in Florida. Pursuant to §§ 97.012 Fla.Stat. (1)- (2), (11), (16) (2021). This

2

Defendant is the "chief election officer of the state" whose duties include ensuring "uniformity in the interpretation and implementation of the election laws" ; the development of "uniform standards for the proper and equitable implementation of the registration laws" for Florida's statewide voter registration system created and administered by this Defendant as required by the Help America Vote Act of 2002; and the use of "written directions and opinions to the supervisors of elections on the performance of their official duties" with the authority to sue Florida's Supervisors of Elections to enforce their duties as provided by law.

6. Ron Turner, is the Supervisor of Elections for Sarasota County, Florida, whose duties require he "ensure that any voter registration system used by the Supervisor for administering his or her duties" complies with "the specifications and procedures established by the rules of the department [Florida Dept. of State]"under §§ 97.021 and 98.01 Fla.Stat. (2021). This Defendant also hires election boards of poll workers who decide "all questions that may arise before the members of an election board" and is "responsible for the attendance and diligent performance" of the duties imposed on these poll workers under § 102(1) (a) Fla.Stat. (2021).

6

## FACTUAL ALLEGATIONS7

7. Over 3 million Florida voters are registered with "No Party Affiliation" and specifically in Sarasota County, where the Plaintiff resides, over 95 thousand voters are registered with "No Party Affiliation."

8. Section 101.102 Fla.Stat. (2021) provides:

"In a primary election a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other. It is unlawful for any elector to vote in a primary for any candidate running for nomination from a party other than that in which such elector is registered."

9. Ever since Plaintiff's Florida registration of "No Party Affiliation" on August, 26, 2011, when he had to declare his party affiliation or lack of affiliation in order to vote in Florida's elections, Defendants have prohibited him from voting in any party primary by enforcement of § 101.102 Fla.Stat. (2021). They have done this despite his desire to do so because of what is commonly termed in Florida a "closed primary" system excluding those who are not party members.

10. Unless this Court intervenes, Defendants will continue to enforce § 101.102 Fla.Stat. (2021) so as to prohibit Plaintiff from voting in the next Florida party primaries scheduled for August 23, 2022 and the next Presidential Preference Primary scheduled for March 10, 2024.

11. In violation of 42 U.S.C. § 1983, Defendants have jointly or severally

subjected and will subject Plaintiff to the deprivation of his rights, privileges,

and immunities secured by the Constitution of the United States by enforcing §

101.102 Fla. Stat. (2021) and causing him injury by the suppression of his

primary vote in selecting political candidates who are obligated to represent all

citizens of the United States and Florida regardless of their party affiliation or

non-party affiliation.

### FIRST CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983

**(Violation of the First Amendment Freedom from Compelled Speech or Compelled Association)**

12. Plaintiff incorporates by reference the allegations contained in Paragraphs 1

through 12 as though fully set forth herein.

13. Plaintiff is obligated by law, and against his choice, to financially support and

subsidize the" closed primary" system established by § 101.102 Fla. Stat (2021),

set out in in Paragraphs 8 and 9 above, by paying annually an ad valorem

property tax to the General Fund of the Sarasota County Commission and drawn

upon by Defendant, Ron Turner, the Supervisor of Elections in Sarasota County,

where Plaintiff is registered and pays his county taxes. This Defendant uses the

revenue from this tax to finance the costs of operating primary elections in

Sarasota County, including those in which Plaintiff is legally forbidden to

participate because of his political beliefs and principled decision not to associate with or become a member of any political party.

14. In the latest available year of 2020, the Defendant, Ron Turner, Supervisor of Elections in Sarasota County, spent a total of $752, 307.56 to hold the Presidential Preference Primary of March 17, 2020 and $1,000,043.33 for the remaining primaries on August 18, 2020. These expenditures were taken from the General Fund set up the Sarasota County Commission for "general government services," including primary elections, with ad valorem property tax revenues collected from all Sarasota County taxpayers, including those registered as "Not Politically Affiliated."

15. "Not Politically Affiliated" registered voters in Sarasota County, including the Plaintiff, number approximately one-fourth of the total number of county registered voters. Yet these voters, including Plaintiff, were all prohibited from voting in party primaries which their tax dollars support because of their political beliefs and right not to associate with political parties.

16. By enforcing § 101.102 Fla.Stat. (2021) Defendants, Cord Byrd and Ron Turner, have jointly and severally prevented Plaintiff from voting in state-supported primaries because of his political beliefs and right not to associate with political parties. Defendants have therefore violated his First Amendment

6

9

rights as discussed herein by compelling him to subsidize and support with his taxes the private speech of political parties with which he refuses to support or associate.

## SECOND CLAIM FOR RELIEF UNDER SEC. 42 U.S.C. § 1983

**(Violation of the Fundamental Right to Vote Provided by the Free Speech Clause of the First Amendment of the United States Constitution)**

17. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 12 as though fully set forth herein.

18. The First Amendment represents the voice of citizens in the most effective way possible when it protects the fundamental right to express a political opinion by voting. The freedom to vote is a First-Amendment activity at the very heart of our democratic system of government.

19. The right to vote in a primary election and the right to vote in a general election have substantially and effectively become part of an integral and unified electoral system in Florida, as indicated in (A)-(E) of this Paragraph below, with the result that the right of Plaintiff to vote in a primary is as fully protected by the First Amendment as is his right to vote in a general election:

(A) Article VI § 5 (b) Fla. Const. , popularly known as the Universal Primary Contest, provides: "If all candidates for an office have the same party affiliation and the winner will have no opposition in the general election, all

qualified electors, regardless of party affiliation, may vote in the primary elections for that office."

(B) Article VI § 7 Fla. Const. provides in pertinent part: "It is the policy of this state to provide for state-wide elections in which all qualified candidates may compete effectively."

(C) Section 100.011(3) Fla.Stat.(2021) provides: "The expenses of holding all elections for county and state officers necessarily incurred shall be paid out of the treasury of the county or state, as the case may be, in the same manner and by the same officers as in general elections."

(D) Section 100.191 Fla.Stat. (2021) provides in pertinent part: "All laws that are applicable to general elections are applicable to special elections or special primary elections to fill a vacancy in office or nomination."

(E) Section 105.031 Fla. Stat. (2021) permits all registered voters, including those "Not Politically Affiliated" to vote in primary elections for county and circuit judges as well as in any general election for such judges.

20. As a result of the evolution of Florida primary elections into a unified and integrated electoral system the deprivation of the right to vote in a primary election because of party affiliation or the lack of party affiliation is governed by the same First Amendment rights that apply to general elections in Florida.

8

20. By enforcing the closed-primary system of Florida, as mandated in § 101.102 Fla. Stat. (2021), set out in Paragraphs 8 and 9 above, the Defendants, in an unconstitutional Hobson's choice, have forced the Plaintiff, registered as "Not Politically Affiliated" as a matter of principle, to either forfeit his fundamental right to vote in elections with the same effectiveness as party voters or else forfeit his other fundamental right not to associate or identify himself with political parties.

### THIRD CLAIM FOR RELIEF UNDER 42 U.S.C. SEC 1983
### (Violation of the Fourteenth Amendment Equal Protection Clause)

21. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 21 as though fully set forth herein.

22. Plaintiff belongs to a class of qualified voters registered as "Not Politically Affiliated,", who despite being similarly situated to another class of qualified voters registered to a political party, are invidiously discriminated against because of Florida's closed-primary system established by §101.021, Fla. Stat. (2021), set out above in Paragraph 8P. This closed-primary system cannot be justified under the strict, exacting, or heightened scrutiny required where the fundamental rights of voting and political non-affiliation under the First Amendment are at stake.

9

23. As a member of this class of voters registered as "Not Politically Affiliated," Plaintiff is also being unlawfully discriminated against because of the arbitrary and capricious nature of the Universal Primary Contest provision found in Art. VI § 5(b) of the Florida Constitution, set out in Paragraph 19 (A) above. Because of judicial interpretation and devious manipulation by political parties in the use of "write- in" candidates, Art. VI, § 5(b) of the Florida Constitution prevents Plaintiff, and other "Not Politically Affiliated" voters, from having the same opportunity to affect the outcome of a general election to the same extent as members of political parties. This system of Universal Primary Contests cannot be justified under the strict, exacting, or heightened scrutiny required where the fundamental rights of voting and political non-affiliation are at stake.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Michael J. Polelle, respectfully requests the following relief:

A. A declaration that § 101.102 Fla.Stat. (2021) and Art. VI § 5(b) of the Florida Constitution violate the First and Fourteenth Amendments of the United States Constitution both facially and as applied to Plaintiff insofar as they prevent Plaintiff from voting in Florida election primaries solely because of his political choice to be registered as "Not Politically Affiliated."

B. A permanent injunction prohibiting Defendants, their agents, employees, successors, and all persons acting in concert or participation with them from enforcing § 101.102 Fla.Stat.(2021) and Art. VI § 5(b)of the Florida Constitution or any other statute, law, regulation, or custom which prohibits Plaintiff from voting in future Florida election primaries solely because of his choice to remain "Not Politically Affiliated."

C. Any other relief this Court deems just and proper.

DATED: June 6, 2022    Respectfully Submitted,

By: Michael J. Polelle

Michael J. Polelle, Pro Se.

1102 Ben Franklin Drive Unit 511

Sarasota, Florida 34236

(941) 388-1840

mpolel2@uic.edu

11

Signed Copy

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MICHAEL J. POLELLE

    Plaintiff

    V.

    Defendants

CORD BYRD, solely in his official

capacity as Florida Secretary of State

and

                CASE NO.  8:22-CV-1301-SDM-AAS

RON TURNER, solely in his official

Capacity as Supervisor of Elections

for Sarasota County

1

**PLAINTIFF'S RESPONSE TO THE AMENDED MOTION TO DISMISS BY DEFENDANT, CORD BYRD, FLORIDA SECRETARY OF STATE, AND THE MOTION TO DISMISS BY DEFENDANT RON TURNER, SUPERVISOR OF ELECTIONS FOR SARASOTA COUNTY**

## I. PLAINTIFF HAS STANDING TO ASSERT HIS CONSTITUTIONAL CLAIMS

In a case upholding the standing of physicians to challenge a law inhibiting their First Amendment right of free speech, the Eleventh Circuit confirmed that Article III of the Constitution requires the plaintiff to incur an injury-in-fact or be threatened with a concrete and particularized injury-in-fact that is fairly traceable to the alleged action of the defendant and is likely to be redressed by a favorable decision. *Wollschlaeger v. Governor, State of Florida*, 843 F.3d 1293, 1303-04 (11th Cir.2017).A. LOCAL

### A. TAXPAYER STANDING

As alleged in his First Claim for Relief in ¶¶ 12-16 of his Complaint (p.2), Plaintiff pays an annual ad valorem property tax into a General Fund of the Sarasota County Commission from which the Defendant, Ron Turner, withdraws funds to finance primary elections excluding Plaintiff solely because of his political decision to register as a voter with "No Party Affiliation." In 2020 Defendant, Ron Turner, spent $752, 307 to hold the Presidential Primary and $1,000,043.33 for other primaries from which Plaintiff was excluded because of his principled political choice to register without party affiliation. (allegation of ¶ 14 of First Claim for Relief in Complaint).

2

111

Although federal and state taxpayers generally lack standing in federal court to challenge federal or state expenditures, taxpayer standing does exist to sue municipal corporations for the illegal expenditure of local funds, as acknowledged in *Daimlerchrysler Corp. v. Cuno*, 547 U.S. 332 (2006). "The *Frothingham* Court noted with approval the standing of municipal residents to enjoin the 'illegal use of the money of a municipal corporation,' relying on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general person taxpayer suits." *Id.* at 349

In addition, Plaintiff urges taxpayer standing based on a First Amendment exception to the general rule disallowing standing for federal and state taxpayers who challenge illegal federal or state expenditures. The Court in *Flast v. Cohen*, 392 U.S. 83 (1968) allowed standing to federal taxpayers challenging federal legislation financing the purchase of secular textbooks for religious school on the basis of the Establishment Clause and the Free Exercise Clause of the First Amendment. "Whether the Constitution contains other specific limitations on spending] can only be determined in the context of future cases." *Id.* at 105.

Plaintiffs submits that it would betray the reasoning of *Flast* to conclude that the singular importance of the First Amendment only applies in standing cases involving the Establishment Clause and Free Exercise Clause and not the Freedom of Speech Clause alleged by Plaintiff in his Complaint. Splitting First Amendment rights for purposes of standing or lack of standing is akin to King Solomon's shrewd proposal to split the baby

3

with a sword to determine the true mother who shrank in horror at the suggestion while

the false mother urged the splitting.

### B. INJURY-IN-FACT

Defendants mischaracterize Plaintiff's injury-in-fact by claiming he has only a

"desire" to vote in party primaries. Plaintiff alleges in ¶ 9 of his Complaint (p.4) that

"Defendants have prohibited him from voting in any party primary by enforcement of §

101.021, Fla. Stat. (2021) [section number mistyped as § 101.102 in filed copy of

Complaint]." An actual arrest, prosecution, or other enforcement action is not required

for Article III standing. Threatened or imminent enforcement of the law will suffice. The

court in *Wollschlaeger v. Governor, State of Florida*, 848 F.3d 1293, 1304 (11th Cir.

2017) stated clearly:

When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S.Ct. at 2342 (citing other Supreme Court cases as examples). A person "can] bring a pre-enforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]' " *Id.* (citation omitted). *See also ACLU v. The Florida Bar*, 999 F.2d 1486, 1494 & n.13 (11th Cir. 1993) (explaining that a plaintiff must have an objectively reasonable belief about the likelihood of disciplinary action).

Although he is prepared to do, it would be an exercise in futility to require

Plaintiff to attempt to crash a party primary election in Florida, such as the one scheduled

for August 23, 2022, by refusing to change his voter affiliation from "No Party

Affiliation" to affiliation with a political party and yet demanding to vote in that primary

4

at the risk of being ejected from the polling place or arrested. The law of standing does not require him to violate or attempt a violation of Florida's election law before challenging it in the courts.

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (intent to engage in political speech sufficient for standing) the Supreme Court explained that where an individual is threatened with an enforcement action for asserting a right, an actual enforcement action against that individual is not required. "A Plaintiff satisfies the injury-in-fact requirement by alleging an intention to engage in a course of conduct affected with a constitutional interest but proscribed by statute." *Id.* at. 159. Defendant does not deny that Florida's "Closed Primary" provision in § 101.021, Fla. Stat. (2021) effectively prohibits the Plaintiff, who is registered to vote with "No Party Affiliation," from voting in any party primary so long as he holds fast to his political conviction of non-party affiliation.

The Defendant's assertion that there is no Injury-in-fact from the prohibition of §101.021 because Plaintiff can "simply" register as a member of a party 29 days before a primary election. This misses the central issue of Plaintiff's Complaint. Plaintiff's sincere and determined conviction to remain politically unaffiliated with any party is at the heart of a fundamental right accorded every American to remain unaffiliated with any governmental effort to compel association with a political or religious belief. *West Virginia State Board of Educ. v. Barnette*, 319 U.S. 624, 642 ( 1943), ("If there is any fixed star in our constitutional constellation, it is that no official, high or mighty, can

proscribe what shall be orthodox in matters of politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.")

As a matter of constitutional right and conscience, Plaintiff cannot "simply" choose a party primary in which to vote. To argue Plaintiff can avoid the very issue he is trying to raise in court by merely voting in a party primary is equivalent to asking an atheist to swear membership in any organized religion of his or her choice, in order to vote in a government-operated and government-subsidized primary. But the Supreme Court has clearly ruled that government may not inhibit political belief and association through the coercive conditioning of core First Amendment rights on the threat of withholding some benefit in the form of employment or otherwise. *Elrod v. Burns, 427 U.S. 347 (1976).*

If Plaintiff were to lie about his mental state by "simply" changing his voter registration from "No Party Affiliation" to "Republican" or "Democrat," he would risk running afoul of Florida laws which criminally punish fraudulent registration. The Supervisor of Elections is authorized to investigate fraudulent registrations and illegal voting. §104.42, Fla. Stat. (2021). Furthermore, §104.011, Fla. Stat. (2021) makes it a third-class felony to willfully swear or affirm falsely by oath or affirmation in submitting voter registration information and §104.15, Fla. Stat. (2021) makes it a third-class felony for any person, who knows he is unqualified, to vote in any election.

The court in *Lacasa v. Townsley, 883 F. Supp. 2d 1231, 1235, 1238 (S.D. Fla. 2012,* cited by Defendant, admitted: "The present litigation presents a unique factual

scenario that certainly has not been considered by the Supreme Court." *Id* at 1235.

Nonetheless, The *Lacasa* court relied on *California Democratic Party v. Jones*, 530 U.S.

567, n 5 (2000) to find a lack of standing , even though standing was not an issue before

the Supreme Court in the *California Democratic Party* case. The *Lacasa* court appears to

have conflated issues of standing with issues related to the merits.

In that short footnote 5, Justice Scalia was not discussing the issue of standing but

the weak relationship, if any, between a party and all voters, including members of

opposition parties as well as independent voters, are allowed to vote in a "blanket

primary" to select the party's candidate for the general election. Footnote 5 did not even

mention standing for good reason. The Democratic Party, not non-party voters desiring to

vote in its primaries, had brought the case to successfully challenge California's "blanket

primary" system as a violation of the party's right not to have non-party members decide

its nominees for the general election. That scenario is not the case before this Court.

Nowhere in his Complaint does Plaintiff  suggest the adoption of a "blanket

primary" in which voters belonging to an opposing party are allowed to participate in

another party's primary. If Florida's closed-primary system is declared unconstitutional,

the Florida legislature is free to adopt other primary solutions left open by the Supreme

Court that avoid the constitutional issues raised by Plaintiff in his Complaint and yet

respect the constitutional rights of political parties.

## C. TRACEABILITY AND REDRESSABILITY

7

In his Amended Motion to Dismiss (p.3), Defendant Boyd's contention is that even if there were an injury-in-fact, any injury is not traceable to or redressable by the Florida Secretary State. Plaintiff's Complaint alleges in ¶ 5 of his Complaint (pp.5-6), and Florida law confirms, that aside from other relevant duties as chief election officer of the state, the Florida Secretary of State must "provide written direction and opinions to the supervisors of election on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." §97.012 (16), Fla. Stat. (2021). More than that, the Florida Secretary of State must bring and maintain lawsuits "to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to chapters 97 through 102 and 205 or to enforce compliance with any rule of the Department of State adopted to interpret or implement any of these chapters." *§97.012 (14), Fla. Stat. (2021).*

As is axiomatic in tort law, there can be more than one cause that contributes to an injury. Where two defendants are jointly and severally responsible each cannot escape liability by saying that but for the actions of the other the harm would not have occurred. This principle is implied in the way *Loggerhead Turtle v. v. County Council of Volusia County*, 148 F.3d 1231 (11th Cir.1998) handled the issue of standing. Sea turtles had standing for a county's refusal to ban beach-driving and artificial lights despite the county's claim that the current regulations in four municipalities did not permit the regulation sought.

8

The court acknowledged that for standing purposes an injury cannot be the result of an independent third-party action but also said: "On the other hand, standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties (citation omitted)." *Id* at 1247. The failure to regulate in *Loggerhead Turtle* did not defeat the traceability and redressability required for standing any more than would the failure to regulate defeat standing as regards the Secretary of State. "We agree with the Turtles that they have shown a sufficient causal connection to seek to hold Volusia County liable for 'harmfully' inadequate regulation of artificial lighting in the municipalities of Daytona Beach, Dayton Beach Shores, Ormond Beach and New Smyrna Beach." *Id.* at 1249.

*Jacobson v. Sec'y of State,* 974 F.3d 1236, 1242 (11th Cir. 2020), cited by Defendant Boyd in his Amended Motion to Dismiss (P.3), is distinguishable. Voters and organizations supporting the Democratic Party sued the Florida Secretary of State for declaratory and injunctive relief in a challenge to the order in which candidates were placed on Florida ballots. The most obvious distinction is that the hypothetical and conjectural nature of how ballot positions affect the political fortunes of the Democratic and Republican parties is simply not a concrete and demonstrable injury-in-fact. The lack of injury-in-fact explains the decision in itself. Being barred by law from voting in a primary his taxes help fund is an actual and concrete harm by contrast. Plaintiff will not be allowed to vote. No uncertainty exists as to that fact. The court's further conclusion

that even if there were an injury-in-fact, it was not traceable to or redressable by the Secretary of State is not necessary to explain the lack of standing in that case.

*Jacobson*'s dictum about the absence of traceability and redressability by the Secretary of State do not apply here because the court gave as an independent reason for its decision the fact that no Supervisor of Elections was named a party. "The voters and organizations' failure to join the Supervisors as defendants is an independent reason that they lack standing to maintain this action." *Jacobsen* at 1253. The Plaintiff in this case, on the other hand, has sued and served the Sarasota Supervisor of Elections as well as the Florida Secretary of State. To shore up its standing reasoning even further, the court in *Jacobson* invoked the political question doctrine to rule against the claim on the ground that no judicial standards existed a to determine a fair ballot position. *Id.* at 1241. The political question doctrine has no application to this case.

Other decisions have recognized that assuming an injury-in-fact, both the Secretary of State and Supervisors of Elections may have traceable and redressable duties under the Florida Election Code. In a consolidated action to challenge Florida's election procedures the Northern District held that certain injuries were fairly traceable to and redressable by both the Florida Secretary of State and Supervisors of Election. *Nielsen v. DeSantis*, 469 F.Supp.3d 1261, 1267 (N.D.Fla. 2020) ("An injury is traceable to a defendant if the defendant has a role in implementing or enforcing the provision that causes the injury. For most of the provisions at issue, this includes both the Secretary of State and the Supervisors of Elections."). *See also, e.g.*, *Florida State Conference of the*

10

*NAACP v. Lee*, 566 F.Supp.3d 1262, 1263-64 (N.D.Fla.2021) (drop box restriction traceable to and redressable by Florida Secretary of State and Supervisors of Election) and *League of Women Voters of Florida, Inc. v. Lee*, 2022 WL 969538 at 15 (N.D.Fla. 2022) (rejection of claim by Secretary of State that intentional injury-in-fact must be redressed by Supervisors of Election in each of Florida's 67 counties).

## II. PLAINTIFF HAS STATED A CLAIM ON WHICH RELIEF COULD BE GRANTED

### A. COMPELLED SPEECH AND ASSOCIATION

Defendant Boyd notes that Florida has had "closed primaries" since 1913 (Def. Amended Motion to Dismiss, p. 2). But another key background fact is that the First Amendment was not even applied to the states until *Gitlow v. New York*, 268 U.S. 652 (1927). Over the years the number of states with Florida's hard-core closed-primary system has decreased to only 11 states, including Florida. *World Population Review*, https : // www.worldpopulationreview .com/state-rankings/closed primary states. Click first hyperlink "Closed Primary States 2022" from dropdown (New Jersey, Delaware, Kansas Florida, Kentucky, Nevada, New Mexico, New York, Oregon, Pennsylvania, and Wyoming) (last visited July 16, 2022). Maine is also included in the *Word Population Review* study but Maine more recently abolished its closed-primary system. Starting in 2024, Maine will allow voters registered as unaffiliated to participate in party primaries while not allowing Democrats and Republicans to vote in the other party's primaries.

David Meyers, "Maine joins list of states with open primaries," *Fulcrum*, https:// www. thefulcrum.us/Elections/Voting/maine-open primaries (last visited July 16, 2022).

The growing tension between closed primaries and the Constitution has finally come to a breaking point in *Janus v. AFSCME, 585 U.S.___.138 S.Ct. 2448 (2018)*. In this landmark decision the Supreme Court overruled its prior decision and struck down an Illinois law requiring a non-union member to pay agency fees to a union for collective bargaining services because the law violated the First Amendment by impermissibly compelling the non-union member's speech and association. *See McDonald v. Longley,* 4 F. 4th 229 (5th Cir. 2021) (*Janus* holding extended beyond collective bargaining to integrated bar fees).

"Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id.* at *2463*. "Because the subsidization of private speech impinges First Amendment rights it cannot be casually allowed." *Id.* at 2464. Likewise, Plaintiff is being pressured to subsidize speech and support political associations when he refuses on principle to vote in party primaries by deceptively claiming a party membership which he shuns, but yet is required to support through his taxes.

Furthermore, just as the "free rider" justification was insufficient in *Janus,* any alleged Florida interest in preventing "raiding" of a party's primaries by political opponents is even more beside the point because Plaintiff's Complaint only asks that

12

voters registered with "No Political Party" be allowed to vote in primaries. Without reaching whether "strict scrutiny" applied, the Court struck down the Illinois law with the use of "exacting scrutiny" and rejected a rationality test for evaluating the state' interest. Not even the state's interest in labor peace, avoiding "free riders" and other concerns was sufficient to withstand this level of scrutiny. *Id.*at 2465.

## B. IMPOSITION OF AN UNCONSTITUTIONAL CONDITION ON VOTING.

In *Rutan v. Republican Party of Illinois*,497 U.S. 62, 72 (1990) the Supreme Court held that it violated the First Amendment rights of certain public employees for a governmental official to base promotions, transfers, and other employment decisions on affiliation with a political party or support for that party where no vital governmental interest was involved. The opinion noted that for at least a quarter century the Court has made it clear that even persons who have no right to a governmental benefit may not be denied that benefit by infringing a constitutionally protected interest, such as freedom of speech. "For if the government could deny a benefit to person because of his constitutionally protected speech or association, his exercise of this freedom would in effect be penalized or inhibited. This would allow the government to 'produce a result which (it) could not command directly. "Id.at72, *citing, Speiser v. Randall*, 357 U.S. 513, 526 [parallel citations omitted]." *Accord, Elrod v. Burns,* 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) (dismissal for different political beliefs and associations)

The Florida closed primary places an unconstitutional condition on the right of Plaintiff to exercise his First Amendment rights by offering him the benefit of voting in a

13

primary system, funded in part by him and some other 3 million Florida voters officially registered as not politically affiliated, if only he will forsake his political beliefs and rights of association by changing his registration from a person with "No Party Affiliation" to one with a party affiliation.

His choice is that between a constitutionally impermissible rock and hard place. It is the classic Catch-22. Either sacrifice your refusal to support the party system and betray your political beliefs by outward deception in changing your public voting registration, or else forfeit your fundamental right to vote in a primary and have an equal voice with partisan voters who will otherwise determine the ultimate candidates and leave you with a greatly diminished choice in the general election.

Neither Defendant has denied the allegations of Plaintiff's Second Claim for Relief that the right to vote in a primary election and the right to vote in a general election have become essentially part of an integrated and unified electoral system in Florida. The conditioning of his right to vote in a primary is, therefore, like conditioning his right to vote in a general election. This is especially so since the vote in a primary is crucial to determining who the candidates will be in a general election. At the very least, Plaintiff submits this is not an issue to be determined at this premature point in the case. The burden is on the State of Florida to prove it has vital interests that survive, at the very least, the "exacting scrutiny" established by the Supreme Court.

14

## C. PLAINTIFF'S POSITION IS CONSISENT WITH SUPREME COURT OPINIONS BALANCING RIGHTS OF POLITICAL PARTIES AND FIRST AMENDMENT RIGHTS OF VOTERS.

Plaintiff's Complaint is not barred as a matter of law by the Supreme Court decisions, cited by Defendants, of *California Democratic Party v. Jones*, 530 U.S.567 (2000) and *Clingman v. Beaver, 544 U.S. 581 (2005)*.  Plaintiff does not ask in the Complaint for a specific type of replacement for the Florida closed-primary and would prefer to leave that to the Florida legislature. All plaintiff contends is that the current version of the Florida close-primary is unconstitutional. The following case discussion indicated how the Plaintiff's First Amendment rights can be compatible with the First Amendment rights of political parties.

In California *Democratic Party, 530 U.S. 567,581 (2000)* the Supreme Court struck down Proposition 198 as a violation of the associational rights of political parties. California's had changed from closed primaries to "blanket" primaries. The Court explained that in "blanket" primaries each voter's ballot lists every candidate regardless of party affiliation and permits voters to choose freely among them. The one with the most votes became the party's nominee in the general election. The "blanket" primary was unconstitutional only because it eviscerated the First Amendment right of a party to pick its own nominees. The decision did not condemn other forms of "open" primaries which allow political parties to determine their own nominees before opening a primary to all voters.

In fact, the Supreme Court in *Washington State Grange v. Washington State Republican Party, 557 U.S. 442 (2008)* upheld as constitutional a "modified blanket" primary which avoided the fatal flaw of having all voters decide a party's nominee. "Whether parties nominate their own candidates outside the state-run primary is simply irrelevant. In fact parties may now nominate candidates by whatever mechanism they choose because I-872 repealed Washington's prior regulations governing party nominations." *Id.* at 453. The Court said it was "sheer speculation" that voters would think candidates running in a primary with party identification were the nominees of the party. *Id.* at 454.

Furthermore, the Supreme Court in *Clingman v. Beaver*, 544 U.S. 581, 587 (2005), has endorsed Oklahoma's semi-closed primary system in which a political party may allow voters registered as Independent to vote in its primary but not voters affiliated with another political party. The Libertarian Party objected on the basis that it wished to allow all voters, even those from other parties, to vote in its primaries. The court rejected the attack on Oklahoma's semi-closed system with these words:

In *Tashjian*, this Court struck down, as inconsistent with the First Amendment, a closed primary system that prevented a political party from inviting Independent voters to vote in the party's primary. 479 U.S., at 225, 107 S.Ct. 544. This case presents a question that *Tashjian* left open: whether a State may prevent a political party from inviting registered voters of other parties to vote in its primary. *Id.*, at 224, n. 13, 107 S.Ct. 544. As *Tashjian* acknowledged, opening a party's primary "to all voters, including members of other parties, ... raise[s] a different combination of considerations." *Ibid.* We are persuaded that any burden Oklahoma's semiclosed primary imposes is minor and justified by legitimate state interests.

Far from dooming Plaintiff's Complaint at the outset, these cases actually provide a constitutional blueprint for the replacement of the Florida closed primary system. If anything, *Tashjian v. Republican Party of Connecticut*, 479 U.S.208 (1986) provides another reason why 101.021, Fla. Stat. (2021) is unconstitutional. That statutory provision flatly makes it unlawful for any voter to cast a ballot in any primary other than the primary of the party with which the voter is registered. Contrary to the holding of *Tashjian*, a political party in Florida would not be allowed to open up its primary to voters not affiliated with a party even if the political party wanted to.

## D. PLAINTIFF AND OTHER VOTERS REGISTERED WITH "NO PARTY AFFILIATION" ARE TREATED DIFFERENTLY FROM OTHER QUALIFIED VOTERS WITH WHOM THEY ARE SIMILARLY SITUATED IN EVERYTHING BUT THE DISCRIMINATION BECAUSE OF THEIR POLITICS.

Defendant Turner's denial of any equal-protection problem occurs because he assumes all Florida voters are treated the same. "In general, Plaintiff has the same rights as every other Florida voter. If he registers with a party, he may vote in its primary. 101.021. Plaintiff does not allege otherwise (Def. Turner's Motion to Dismiss, p.8.)." But that observation …"If he registers with a party" …misses the central issue of this case. Plaintiff acknowledges he could vote in a primary but that is not the real issue.

The issue is whether a state can require a taxpayer and independent voter to vote in party primary in order to be placed on an equal basis with other voters. Not-politically-affiliated voters are similarly situated to party voters in that they are all voters but yet are

17

126

invidiously discriminated against because of the denial of the right to vote in a government-funded and government-supervised primary system that operates only for the benefit of those who choose to associate with those parties and express adherence to them. See, e.g., the original voter-apportionment case of *Baker v. Carr*, 369 U.S. 186, 207 (1962) ("These appellants seek relief in order to protect or vindicate an interest of their own and of those similarly situated."). Plaintiff and the other Florida independents who have officially registered as voters with "No Party Affiliation" are similarly situated to other qualified voters but they are otherwise handicapped and inhibited in the full exercise of their constitutional rights.

*Griffin Indus. Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007) is not relevant to Plaintiff's case because that case involved a chicken processor claiming a "class of one" for being subjected to more rigorous environmental enforcement than his competitors. *The Griffin* court noted that the plaintiff in that case failed to meet the second prong of a "class of one" claim because the enforcement was "rational." Plaintiff in the base before this court is not a "class of one" but part of the three- million- plus voters whose votes are suppressed in Florida primaries. Moreover, Plaintiff is making a claim based on the First Amendment which requires a strict, exacting, or heightened scrutiny and not merely some rational justification.

III. PLAINTIFF HAS COMPLIED WITH F.R. CIV.P. 5.1(a) (2) BY NOTIFIYING
STATE ATTORNEY GENERAL AS REQUIRED.

In compliance with F.R.CIV.P. 5.1(a) (2), Plaintiff, on July 14, 2022, deposited an

envelope by certified mail in the U.S. Post Office at 1661 Ringley Boulevard in Sarasota,

Florida, 34236, on or about 1:30 p.m. ,with the same addressed to the Office of the

Florida Attorney General, PL-01 The Capitol, Tallahassee, Florida, 32399-1050 and

containing the notice of constitutional questions raised by Plaintiff as to the state statute

and state constitutional provision referred to in Plaintiff's Complaint, as well as copy of

the Complaint. Sixty days after this notice is filed, or after this Court sets a later time,

whichever is earlier, the Attorney General may intervene. *Id.* at (c). "A party's failure to

file and serve the notice, or the court's failure to certify, does not forfeit a constitutional

claim or other defense that is otherwise timely asserted." *Id*, at (d).


WHEREFORE, the Plaintiff requests this Court to deny the Amended Motion to

Dismiss of Defendant Cord Boyd, Florida Secretary of State and to deny the Motion to

Dismiss of Ron Turner, Supervisor of Elections for Sarasota County.

> Respectfully submitted,
>
> MICHAEL J. POLELLE
> PLAINTIFF PRO SE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all counsel of record by mailing a copy to Ashley E. Davis, Deputy General Counsel of the Florida Department of State, R.A. Gray Building, Suite 100, 500 South Bronough Street, Tallahassee, Florida 32399-0230 and emailing a copy to her email address at Ashley.Davis@dos.myflorida.com and by mailing a copy to Ashley E. Gaillard, Esq., Bentley Goodrich Kison, 783 S. Orange Avenue, Suite 300, Sarasota, Florida, 34236 and by emailing a copy to her email address at agaillard@bgk.law

MICHAEL J. POLELLE

PLAINTIFF PRO SE

1102 Ben Franklin Drive

Unit 511

Sarasota, Florida 34236

Tel: (941) 388-1840

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL POLELLE,

     Plaintiff,

v.                         CASE NO. 8:22-cv-1301-SDM-AAS

CORD BYRD, et al.,

     Defendants.

_____/

## ORDER

To certify compliance with Local Rule 3.01(g), the defendants amend

(Docs. 12, 13) their respective motions to dismiss.  The earlier motions (Docs. 8, 9)

to dismiss are **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on July 18, 2022.

_____

**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL J. POLELLE,

     Plaintiff,

v.                             CASE NO. 8:22-cv-1301-SDM-AAS

CORD BYRD and RON TUNER,

     Defendants.

_____/

## ORDER

Appearing *pro se*, Michael J. Polelle sues (Doc. 1) Cord Byrd, the Florida Sec-retary of State, and Ron Turner, the Supervisor of Elections for Sarasota County. When registering to vote in Florida, Polelle reported "No Party Affiliation." (Doc. 1 at 4) Under Section 101.021, Florida Statutes, "a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other." Thus, an elector registered without party affiliation may not vote in any partisan primary election. Polelle argues (Doc. 1 at 5–10) that by pre-venting his voting in a "state-supported" primary election in accord with this statute, the defendants violate Polelle's rights under the First and Fourteenth Amendments to the United States Constitution. Byrd and Turner each move (Docs. 12, 13) to dis-miss and argue that Polelle lacks standing and fails to state a claim.

As a preliminary matter, Polelle lacks standing to maintain this action. Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Polelle must suffer "an

invasion of a legally protected interest" to have standing. Polelle's "associational 'interest' in selecting the candidate of a group to which [he] does not belong[] falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." *California Democratic Party v. Jones*, 530 U.S. 567, 573 n.5 (2000). The statute's frustration of Polelle's "desire" to vote in a partisan primary is insufficient for standing. *See Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1238 (S.D. Fla. 2012) (Zloch, J.) (denying standing for, and dismissing the complaint of, two registered electors — one registered without party affiliation and one registered as a member of the Republican party — who "desire[d]" to vote in a Democrat primary election without first registering as a member of the Democrat party). [1]

Further, *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), and *Jones* confirm that the associational right "to both expand and limit the persons" entitled to vote in a party's primary is conferred on the political party — not on a voter. *Osburn v. Cox*, 369 F.3d 1283, 1287–88 (11th Cir. 2004) (concluding that the Supreme Court has decided "no case[] in which individual plaintiffs alone" asserted a right to vote in a party's primary and that "the case law weighs against an individual's right to assert such a claim"). Because no political party joins this action or otherwise objects to Section 101.021, this action warrants dismissal for lack of standing.

---

[1] Polelle's argument for standing as a taxpayer is equally unavailing. Polelle acknowledges that "taxpayers generally lack standing in federal court to challenge federal or state expenditures," but Polelle "urges taxpayer standing based on a First Amendment exception to the general rule." (Doc. 14 at 3) This exception is inapplicable because Polelle fails to demonstrate that the government's payment of money to support the primary election violates the First Amendment. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 593 (2007).

Even if Polelle had standing, he fails to state a claim. *Jones*, <u>530 U.S. at 581</u>, rejects the "adulterat[ion of a political party's] candidate-selection process . . . by opening [the process ] to persons wholly unaffiliated with the [political] party." *Jones*, <u>530 U.S. at 584</u>, instructs a frustrated elector with no political affiliation — such as Polelle — to "simply join the [political] party." And until twenty-nine days before a primary election Polelle may change his registration to a different political party and may vote in the primary election for his new political party. "That may put him to a hard choice, but it is not a state-imposed restriction upon his freedom of association, whereas compelling party members to accept his selection of their nomi-nee is a state-imposed restriction upon theirs." *Jones*, <u>530 U.S. at 584</u>.

Under *Jones*, Polelle retains the same choice as every other Florida elector. He may affiliate with a political party and vote in that party's primary or he may register without party affiliation. But Polelle may not burden another's First Amendment freedom of association by voting in a party primary without affiliating with that party. For these reasons and others stated in the motions, the motions (Docs. 12, 13) to dismiss are **GRANTED**, and this action is **DISMISSED**.

ORDERED in Tampa, Florida, on November 3, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 3 -

153

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF SERVICE**

*(Use this form only if service is being made other than through the Court's electronic-filing system.)*

Michael J. Polelle   *vs.*   Cord Byrd and Ron Turner   Appeal No. 22-14031-DD

FRAP 25(b) through (d) (attached) require that at or before the time of filing a paper, a party must serve a copy on the other parties to the appeal or review. Unless the document is being served through the Court's electronic-filing system, the person making service must certify that the other parties have been served, indicating the date and manner of service, the names of the persons served, and their addresses. **You may use this form to fulfill this requirement.** *Please type or print legibly.*

I hereby certify that on (date) January 17, 2023 , a true and correct copy of the

foregoing (title of filing) APPELLANT'S APPENDIX has been (check one):

[✓] sent by mail, postage prepaid

[ ] deposited in the prison's internal mailing system with first-class postage prepaid

[ ] sent by electronic means with the consent of the person being served

[ ] other (specify manner of service) _____

and properly addressed to the persons whose names and addresses are listed below:

Ashley E. Davis, Florida Dept. of State, 500 S. Bronough St., Ste.100 Tallahassee, FL 32399

Ashley Elizabeth Gaillard, Bentley Goodrich Kison, 783 S. Orange Ave., Sarasota , FL 34236

Morgan R. Bentley, Bentley & Bruning, PA, 783 S. Orange Ave., Ste.300, Sarasota, FL, 34236

Office of the Clerk, U.S. Court of Appeals for the Eleventh Circuit, 56 Forsyth St. NW, Atlanta, GA 30303

BRADLEY R. McVAY, FLORIDA DEPT. OF STATE, 500 S. BRONOUGH ST., TALLAHASSEE, FL 32399

_____

MICHAEL J. POLELLE
Your Name (please print)

Michael Polelle
Your Signature