No. 22-14031-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

MICHAEL J. POLELLE,

*Plaintiff-Appellant,*

v.

CORD BYRD, solely in his official capacity as
Florida Secretary of State,

and

RON TURNER, solely in his official capacity as
Supervisor of Elections for Sarasota County,

*Defendants-Appellees.*

Appeal from the United States District Court for the Middle District of Florida

No. 8:22-CV-1301-SDM-AAS

## BRIEF OF APPELLEE RON TURNER

David A. Wallace, Esq.
Florida Bar No. 0608386
Ashley E. Gaillard, Esq.
Florida Bar No. 1019208
Bentley Goodrich Kison P.A.
783 South Orange Avenue, Third Floor
Sarasota, FL 34236
Telephone (941) 556-9030
Attorneys for Appellee Ron Turner

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee, RON TURNER, in his official capacity as Supervisor of Elections for Sarasota County, by and through undersigned Counsel, pursuant to Federal Rule of Civil Procedure 26.1(a), states as follows:

I.    The particular Judges, Attorneys, Persons, Associations of Persons, Firms, Partnerships or Corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock and other identifiable legal entities related to a party are:

1.    Bentley Goodrich Kison P.A.

2.    Bentley, Morgan, Esq.

3.    Byrd, Cord, Secretary of State

4.    Chappell, David, Esq.

5.    Davis, Ashley, Esq.

6.    Florida Department of State

7.    Gaillard, Ashley, Esq.

8.    Merryday, Hon. Steven D.

9.    McVay, Brad, Esq.

10.    Polelle, Michael J.

11.    Sarasota County Supervisor of Elections Office

12.    Turner, Ron

13.    Wallace, David, Esq.

14.    Bradley R. McVay, Esq.

15.    David Chappell, Esq.

II.    No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because the dispositive issues have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..................... i

Statement Regarding Oral Argument ........................................................................ iii

Table of Contents........................................................................................................ iv

Table of Citations....................................................................................................... vi

Preliminary Statement ................................................................................................. 1

Statement of the Issues ................................................................................................ 2

Statement of the Case ................................................................................................. 3

Standard of Review ..................................................................................................... 6

Summary of the Argument .......................................................................................... 7

Argument..................................................................................................................... 9

    I.    Polelle Lacks Taxpayer Standing.............................................................. 9

    II.   Polelle Lacks Traditional Standing ....................................................... 18

        A.    No Injury in Fact...................................................................... 19

        B.    No Causation/Redressability if No Injury ................................ 21

    III.    Polelle Lacks Standing Under the Overbreadth Doctrine.................... 22

    IV.    Florida's Closed Primary System Does Not Violate Polelle's First Amendment Rights............................................................................... 25

    V.    Florida's Closed Primary System Does Not Violate Polelle's Fourteenth Amendment Rights ............................................................ 30

    VI.    Supreme Court Precedent Recognizes the Associational Rights

of Political Parties and Rejects Voter Arguments that Such Rights
Are Incompatible With Their First Amendment and Equal Protection
Rights ................................................................................................... 32

Conclusion............................................................................................... 32

Certificate of Compliance with Type-Volume Limit, Typeface
Requirements, and Type-Style Requirements .......................................... 33

Certificate of Service................................................................................ 34

v

# TABLE OF CITATIONS

## Cases

*American Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*,
567 F.3d 278 (6th Cir. 2009) ........................................................................ 15, 16

*Board of Education Mt. Sinai Union Free School District v. N.Y.S. Teachers Retirement System*, 60 F.3d 106 (2d Cir. 1995)................................................. 16

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)........................................................ 22

*California Democratic Party v. Jones*, 530 U.S. 567 (2000)........................... *passim*

*Campbell v. Rainbow City, Ala.*, 434 F.3d 1306 (11th Cir. 2006) ..................... 30, 31

*CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257 (11th Cir. 2006)........................................................................................ 22, 23, 24

*Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005)........ 6

*Clingman v. Beaver*, 544 U.S. 581 (2005)............................................................. 26

*Crampton v. Zabriskie*, 101 U.S. 601 (1879) ........................................................ 11

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ..................................... 10, 11

*District of Columbia Common Cause v. District of Columbia*,
858 F.2d 1 (1988)................................................................................................ 17

*Doe v. Madison School Dist. No. 321*, 177 F.3d 789 (9th Cir. 1999)..................... 16

*Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429 (1952)...... *passim*

*Flast v. Cohen*, 392 U.S. 83 (1968)............................................................. 9, 10, 12

*Four Seasons Marina Rentals, Inc. v. City of Osage Beach, Mo*,
No. 08-4221-CV-C-NKL, 2009 WL 1543766 (W.D. Mo. June 3, 2009) .......... 24

*Frothingham v. Mellon*, 262 U.S. 447 (1923) ................................................. *passim*

*Gray v. Sanders*, 372 U.S. 368 (1963)................................................................. 18, 29

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) .................................... 31

*Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587 (2007) ......... 12, 15

*Lacasa v. Townsley*, 883 F. Supp. 2d 1231 (S.D. Fla. 2012) ....................... 19, 20, 28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................... 18, 20

*Moore v. Ogilvie*, 394 U.S. 814 (1969) .................................................................... 29

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) .......................................... 29

*Neitzke v. Williams*, 490 U.S. 319 (1989)............................................................. 6, 25

*Nichols v. City of Rehoboth Beach*, 836 F.3d 275 (3d Cir. 2016). .................... 12, 13

*Nielsen v. DeSantis*, 469 F. Supp. 3d 1261 (N.D. Fla. 2020) .................................. 21

*Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004) ...................................................... 19

*Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263 (11th Cir. 2008)....................... 14, 17

*Protect Our Parks, Inc. v. Chicago Park District*, 971 F.3d 722
   (7th Cir. 2020) ............................................................................................... 11, 12

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229
   (11th Cir. 2008)..................................................................................................... 19

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986) ................*passim*

*Terry v. Adams*, 345 U.S. 461 (1953) ...................................................................... 29

*Timson v. Sampson*, 518 F.3d 870 (11th Cir. 2008).................................................... 6

*United States v. Classic*, 313 U.S. 299 (1941) ........................................................ 29

## Constitutions

U.S. Const. Amend. I.................................................................*passim*

U.S. Const. Amend. XIV ...........................................................*passim*

Fla. Const. art. VI § 5(B) ..........................................................*passim*

## Statutes

Fla. Stat. § 97.055.......................................................................... 3

Fla. Stat. § 100.011(3) ................................................................... 4

Fla. Stat. § 100.061..................................................................... 28

Fla. Stat. § 101.021 ...................................................................*passim*

## Rules

Fed. R. Civ. P. 12(b)(1).............................................................*passim*

Fed. R. Civ. P. 12(b)(6).............................................................*passim*

## PRELIMINARY STATEMENT

Plaintiff-Appellant Michael J. Polelle is referred to herein as "Polelle." Defendant-Appellee Ron Turner, Supervisor of Elections for Sarasota County, is referred to herein as "Turner." Defendant-Appellee Cord Byrd, Florida Secretary of State, is referred to herein as "Byrd." References to the record are to the document number on the District Court docket sheet, and the page number. For example, page 1 of the District Court's Order, which is document number 22 on the District Court docket sheet is indicated as Doc 22 – Pg 1.

## STATEMENT OF THE ISSUES

This appeal presents three overarching issues:

1.    Whether Polelle lacks standing, including as a municipal taxpayer or pursuant to the overbreadth doctrine.

2.    Whether Polelle fails to state a claim for a violation of his First Amendment rights.

3.    Whether Polelle fails to state a claim for a violation of his Fourteenth Amendment rights.

## STATEMENT OF THE CASE

Polelle challenged the constitutionality of Section 101.021 of the Florida Statutes, which effectuates the State's "closed primary" system:

> In a primary election a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other. It is unlawful for any elector to vote in a primary for any candidate running for nomination from a party other than that in which such elector is registered.

Fla. Stat. § 101.021.

Polelle is a Sarasota, Florida voter registered as "Not Politically Affiliated." Doc 1 – Pg 4. As such, under Florida law he may not vote in a primary election unless all candidates for an office have the same party affiliation and the winner will have no opposition in the general election. Fla. Const. art. VI, § 5(b). However, he can change his registration up to 29 days before an election to that of the party whose candidate he wishes to participate in selecting through its primary. Fla. Stat. § 97.055.

Polelle asked the District Court for declaratory and injunctive relief against the implementation of Florida's closed primary system. Doc 1 – Pg 10-11. In his first count, Polelle claimed he is obligated to financially support and subsidize the closed primary system established by Fla. Stat. § 101.021 by paying annual ad valorem property taxes to the General Fund of the Sarasota County Commission, some

3

portion of which goes towards Turner's budget. Doc 1 – Pg 5-7. Pursuant to Florida law:

> The expenses of holding all elections for county and state officers necessarily incurred shall be paid out of the treasury of the county or state, as the case may be, in the same manner and by the same officers as in general elections.

Fla. Stat. § 100.011(3). Polelle's second count alleged that Florida's closed primary system violates his First Amendment rights. Doc 1 - Pg 7-9. The third count of Polelle's Complaint alleged that the closed primary system violates his Fourteenth Amendment Equal Protection rights Doc 1 - Pg 9-10.

Defendant-Appellees Turner and Byrd both moved to dismiss the Complaint for lack of standing and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The District Court granted the Motions to Dismiss for the reasons enumerated in its Order and for other reasons stated in the Motions to Dismiss. Doc 22 - Pg 3. The District Court held that as a preliminary matter, Polelle lacks standing to maintain this action as he suffered no invasion of a legally protected interest. Doc 22 - Pg 1-2. The District Court also found that Polelle lacks taxpayer standing. Doc 22 - Pg 2. The question of standing pursuant to the overbreadth doctrine was not raised before the District Court.

The District Court also held that even if Polelle had standing, he fails to state a claim for a violation of his First or Fourteenth Amendment rights. Doc 22 - Pg 3. The District Court cited longstanding Supreme Court precedent directly on point in

holding that the associational rights in question belong to the political party, not the individual, and that Polelle has the same opportunity as every other Florida elector to register with a political party and vote in that party's primary. Doc 22 – Pg 3.

## STANDARD OF REVIEW

An order dismissing a case for lack of standing is reviewed de novo. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1351 (11th Cir. 2005).

A dismissal of a complaint for failure to state a claim is reviewed de novo and the allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).

A dismissal is warranted if, assuming the facts alleged in the Plaintiff's complaint are true, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## SUMMARY OF THE ARGUMENT

Polelle lacks taxpayer standing, including as a municipal taxpayer. Municipal taxpayer standing is available only for a good faith pocketbook action, which must involve a measurable appropriation or disbursement of funds occasioned solely by the activities complained of. Polelle does not seek to stop the County from funding elections; he seeks a change to Florida's party registration requirement for voting in party primary elections. Further, municipal taxpayers have standing to challenge only unconstitutional expenditures. Longstanding Supreme Court precedent dispositively establishes the constitutionality of excluding non-party voters from party primary elections. As the District Court recognized, as a matter of law Polelle cannot establish Florida's closed primaries violate his constitutional rights.

Based on the same longstanding Supreme Court precedent, the District Court also correctly concluded Polelle has suffered no cognizable injury and therefore lacks traditional standing.

Polelle attempts to argue based on the overbreadth doctrine that he has standing as a third party to advocate for the rights of unidentified political parties who are not before this Court and who have expressed no interest in this litigation. He raises this issue for the first time in this appeal. Even had he raised the issue of overbreadth standing below, this Court's jurisprudence indicates that if Polelle lacks

traditional standing in his own right, Polelle cannot rely solely on overbreadth standing.

Even if he had standing, Polelle fails to state a claim for a First Amendment violation, as the District Court held while once again citing to extensive Supreme Court precedent directly on point.

The District Court also properly held that Polelle similarly fails to state a claim for a Fourteenth Amendment violation as he is not treated any differently from any other eligible Florida voter. All Florida voters are required to register with a political party in order to vote in its primary election. To the extent that Polelle refuses to do so, he is not similarly situated to others who have chosen to affiliate with a political party and participate in selecting a candidate to represent them.

Finally, Polelle's attempt to distinguish the Supreme Court precedents that defeat his claim is unsuccessful. Polelle's proposed "alternatives" to the closed primary system that he would personally find preferable improperly disregard the recognized associational rights of political parties to choose their candidate without interference from non-party members.

## ARGUMENT

### I.    Polelle Lacks Taxpayer Standing

Polelle advocated two theories of taxpayer standing before the District Court. First, he urged the Court to depart from longstanding precedent by extending the narrow exception to the general prohibition on federal taxpayer standing. Doc 14 – Pg 3. The exception allows federal taxpayers to challenge only specific types of legislative appropriations that violate the Establishment Clause. *Flast v. Cohen*, 392 U.S. 83 (1968). Polelle wanted the District Court to expand the exception to allow challenges to appropriations violating other First Amendment rights. Doc 14 – Pg 3-4. Second, he argued he had standing as a municipal taxpayer. Doc 14 – Pg 3. Having already held Polelle lacks Article III standing since he suffered no cognizable injury, the District Court dismissed his arguments for taxpayer standing as "equally unavailing." Doc 22 – Pg 2.

On appeal, Polelle recognizes the futility of asking this Court to disregard established precedent on federal and state taxpayer standing but continues to assert municipal taxpayer standing. However, Polelle's challenge is not to the expenditure of funds by his municipality, but to the constitutionality of the state of Florida's closed primary system. His attempt to leverage his status as a municipal taxpayer into standing to challenge political parties' right to restrict voting in their primaries

to registered members, a right already well-established in U.S. Supreme Court jurisprudence, is misguided.

There are three distinct levels of taxpayer standing: federal, state, and municipal. Each was developed separately at common law, and therefore separate analysis is required at each level. Although Polelle no longer asserts federal or state taxpayer standing, understanding the similarities and differences in analysis between the levels and how they evolved is helpful in analyzing his assertion of municipal taxpayer standing.

The Supreme Court established in *Frothingham v. Mellon,* decided with *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923), that federal taxpayers generally lack standing in federal court to challenge federal or state expenditures. A narrow exception to this rule was later created to permit federal taxpayer standing where a federal taxpayer challenges a congressional appropriation made pursuant to Article I, Section 8 that allegedly violates the Establishment Clause of the First Amendment. *Flast v. Cohen*, 392 U.S. 83 (1968). The Supreme Court has since refused to expand this exception beyond the narrow scope articulated in *Flast*. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).

In general, the same rationale for rejecting federal taxpayer standing "applies with undiminished force to state taxpayers." *Id*. at 345. The seminal case regarding state taxpayer standing is *Doremus v. Board of Ed. of Borough of Hawthorne*, 342

U.S. 429 (1952). In *Doremus*, the Supreme Court articulated the principle that a justiciable controversy required the taxpayer to show "a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." *Id.* at 434. The *Doremus* Court elaborated:

> The taxpayer's action can meet this test, but **only when it is a good-faith pocketbook action**. It is apparent that the grievance which it is sought to litigate here is not a **direct dollars-and-cents injury** but is a religious difference. If appellants established the requisite special injury necessary to a taxpayer's case or controversy, it would not matter that their dominant inducement to action was more religious than mercenary. It is not a question of motivation but of possession of the **requisite financial interest that is, or is threatened to be, injured by the unconstitutional conduct**. We find no such direct and particular financial interest here. If the Act may give rise to a legal case or controversy on some behalf, the appellants cannot obtain a decision from this Court by a feigned issue of taxation.

*Id.* at 434-435 (emphasis added).

Municipal taxpayer standing was first recognized in *Crampton v. Zabriskie*, 101 U.S. 601 (1879). Although "a bit of a relic in the modern landscape of standing," *Protect Our Parks, Inc. v. Chicago Park District*, 971 F.3d 722 (7th Cir. 2020), the Supreme Court reaffirmed its existence in *Frothingham* and more recently in *DaimlerChrysler*:

> The *Frothingham* Court noted with approval the standing of municipal residents to enjoin the "illegal use of the moneys of a municipal corporation," relying on "the peculiar relation of the corporate taxpayer to the corporation" to distinguish such a case from the general bar on taxpayer suits.

*DaimlerChrysler,* 547 U.S. at 349 (internal citations omitted).

11

Permeating the jurisprudence on all types of taxpayer standing is some iteration of the concept, rooted in Article III's concrete injury requirement, that there must be some "logical link between the taxpayer's status and the type of legislative enactment attacked." *Hein v. Freedom From Religion Foundation, Inc.,* 551 U.S. 587, 588 (2007) (internal citations omitted). This is how the *Hein* Court, quoting *Flast*, articulated the concept in relation to federal taxpayer standing. As noted above, the *Doremus* court described the state taxpayer standing equivalent of this requirement in terms of "a measurable appropriation or disbursement of... funds occasioned solely by the activities complained of;" or "a good-faith pocketbook action;" or a "direct and particular financial interest." *Doremus,* 342 U.S. at 434-35.

Since *Doremus*, federal courts have consistently applied the "good-faith pocketbook action" rule to municipal taxpayer standing, imposing two threshold requirements: (1) the plaintiff must actually be a taxpayer of the municipality that she wishes to sue; and (2) the plaintiff must establish that the municipality has spent tax revenues on the allegedly illegal action. *Protect Our Parks*, 971 F.3d at 734. Or, as the Third Circuit phrased it, to have standing in federal court a municipal taxpayer must demonstrate: (1) that a particular expenditure accompanied the allegedly illegal practice, and (2) that it put her "out of pocket." *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 281 (3d Cir. 2016).

Like the case at bar, *Nichols* involved a municipal taxpayer's challenge to voting requirements:

> We conclude that the expenditure of municipal funds to hold a special election is not sufficient to establish municipal taxpayer standing. Nichols alleged that the voting procedures at the special election—the six-month residency requirement and the ability of property owners to vote more than once—violated the Fourteenth Amendment. She did not assert that Rehoboth Beach expended funds on the allegedly unconstitutional aspects of the special election, i.e., the voting requirements. **The special election itself would have been held regardless of the procedures Rehoboth Beach employed. In other words, Rehoboth Beach would have expended the funds necessary to hold the special election even if the voting requirements had been different.**

*Id*. at 283 (emphasis added).

Here, Polelle seeks to challenge Florida's procedural requirement that a voter register with a political party before voting in its primary election. He does not assert that Sarasota County or Turner expended funds on this allegedly unconstitutional aspect of the primary elections. He fails to allege that Turner's use of Sarasota County funds, some of which are derived from ad valorem property taxes, to hold elections puts him "out of pocket" in any way. Indeed, as was true for Rehoboth Beach in *Nichols*, Sarasota County would continue to hold and fund party primary elections – for local, state, and national offices – even if the voting requirements were different.

Polelle's desired outcome of eliminating Florida's rule that only voters registered with a political party are eligible to vote in its primary would likely have

13

no measurable financial benefit (or detriment) to taxpayers. If anything, it could conceivably increase the costs to municipal taxpayers by increasing the number of potential voters in party primary elections. This could perhaps marginally increase – but not decrease – the costs of administering the election if, for example, more polling places were needed to accommodate more voters. In any type of election, poll workers must of course verify that voters are registered before they cast their ballots. For party primary elections, having the same poll workers verify party registration at the same time has no measurable financial impact.

Polelle's contention that he has municipal taxpayer standing pursuant to *Frothingham* and *Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263 (11th Cir. 2008), is misguided. *Frothingham* held that the interest of a municipal taxpayer "in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate." 262 U.S. at 486. This Court followed suit in *Pelphrey*: "Our sister circuits have also recognized the standing of municipal taxpayers to challenge unconstitutional expenditures and have applied similar standards." 547 F.3d at 1281 (emphasis added).

Thus, municipal taxpayer standing does not exist to allow challenges to any policy or procedure with which the challenger does not agree regardless of its constitutionality and/or nexus to a municipal expenditure. In his Brief, Polelle puts forth no analysis of the cited case law or its application to the facts at bar. Polelle

misconstrues the holdings of the cited cases as supportive of his cause, when in fact these cases turn on the direct misuse of funds for unconstitutional municipal expenditures. As previously noted, Polelle cannot allege that any municipal expenditures are tied to the allegedly unconstitutional practice of requiring party primary voters to register with the party. Additionally, the United States Supreme Court has already ruled on the constitutionality of that practice, as discussed in the following sections. Polelle has no viable argument as a taxpayer or otherwise that Florida's closed primaries are unconstitutional, or in any way a misuse of municipal funds. The apparent lack of constitutional merit of Polelle's complaint is presumably what led the District Court to dismiss Polelle's claim to taxpayer standing in a footnote because he "fails to demonstrate that the government's payment of money to support the primary election violates the First Amendment." Doc 22 – Pg 2.

Polelle observes that in *American Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278 (6th Cir. 2009), the Sixth Circuit held that municipal taxpayer standing existed without any limitations imposed by *Hein* because one of American Atheists' members was a City of Detroit taxpayer. That is because *Hein* addresses limitations on federal rather than municipal taxpayer standing. However, Polelle conveniently ignores another part of *American Atheists* that explicitly recognizes that limitations on municipal taxpayer standing exist elsewhere:

> In applying this distinction, we have held that, so long as the challenged government action involves the expenditure of municipal funds (or the

15

> loss of municipal revenue), Frothingham's bar on taxpayer suits does not apply. ... Only if the challenged local governmental action involves neither an appropriation nor expenditure of city funds will the municipal taxpayer lack standing, for in that case he will have suffered no "direct dollars-and-cents injury."

*American Atheists*, 567 F.3d at 285 (internal citations omitted).

Polelle similarly ignores an abundance of other case law acknowledging the limitations on municipal taxpayer standing. Federal courts have consistently adhered to the doctrine that municipal taxpayer standing is only available in cases of a "pocketbook injury" to a municipal taxpayer involving "measurable appropriation or loss of revenue." *See, e.g., Bd. of Educ. Mt. Sinai Union Free Sch. Dist. v. N.Y.S. Teachers Ret. Sys.*, 60 F.3d 106, 110–111 (2d Cir. 1995). The Ninth Circuit cited commentary that *Doremus* "stands for the proposition that a state or municipal taxpayer does not have a direct enough interest for his suit to constitute an article III case or controversy unless the activity challenged involves an expenditure of public funds which would not otherwise be made." *Doe v. Madison School Dist. No. 321*, 177 F.3d 789 (9th Cir. 1999) (citing *Taxpayers' Suits, A Survey and Summary*, 69 Yale L.J. 895, 922 (1960)). The Ninth Circuit described its decision and reasoning as "mainstream," pointing to decisions by a number of other Circuits interpreting *Doremus* as limiting municipal taxpayer standing to pocketbook injury in the same way. *See Id.* at 795 (collecting cases from the Eighth, Fifth, Seventh, First, and Eleventh Circuits). The D.C. Circuit likewise noted:

16

> Although *Doremus* involved only state taxpayers, the pocketbook injury requirement also applies to municipal taxpayers, as *Doremus'* reference to *Frothingham* makes clear. For example, municipal taxpayers lack standing when they challenge a regulatory program that only incidentally involves expenditures of public funds.

*District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 5 (D.C. Cir. 1988) (internal citations omitted).

This Court is also situated firmly in the jurisprudential mainstream on this issue, including in *Pelphrey*:

> A municipal taxpayer has standing to challenge a violation of the Establishment Clause by a municipality when the taxpayer is a resident who can establish that tax expenditures were used **for the offensive practice**. … Our sister circuits have also recognized the standing of municipal taxpayers to challenge unconstitutional expenditures and have applied similar standards. … That standard applies here.

*Pelphrey*, 547 F.3d at 1280-1 (internal citations omitted) (collecting cases from the Fifth, Third, Sixth, and First Circuits).

The taxpayers in *Pelphrey* had standing because the County expended public funds to select, invite, and thank certain invocational speakers, and the selection, invitation, and thanking of those speakers was subject to a legitimate constitutional challenge. In contrast, here no municipal funds are expended on implementing or enforcing Florida's statutory requirement that voters register with a political party to vote in its primary. There is no relationship between Polelle's status as a municipal taxpayer and his purported injury. Polelle does not challenge the expenditure or appropriation of municipal funds to hold party primaries as unconstitutional. Rather,

he seeks to vindicate his personal preference that his tax money be spent on primary elections only if he is personally able to override the recognized associational rights of the political parties and take part in selecting their candidates without registering with them. He cannot claim standing as a municipal taxpayer when the municipal fisc, and thus his pocketbook as a municipal taxpayer, is not implicated whatsoever by the closed primary system. Florida's closed primary system is a purely regulatory matter. The District Court was correct that Polelle lacks taxpayer standing, including as a municipal taxpayer.

## II.    Polelle Lacks Traditional Standing

The District Court was also correct that Polelle lacks standing in general. As the District Court noted, Polelle must suffer "an invasion of a legally protected interest" to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The District Court found Polelle's "associational 'interest' in selecting the candidate of a group to which [he] does not belong[] falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest," quoting *California Democratic Party v. Jones*, 530 U.S. 567, 573 n.5 (2000). Doc 22 – Pg 2. Polelle's reliance on *Gray v. Sanders*, 372 U.S. 368 (1963), is therefore misplaced, as Polelle's right to vote is not impaired. Just like any eligible Florida voter, Polelle is allowed to vote in a party's primary if he registers with that party. Fla. Stat. § 101.021.

The District Court further held that the statute's frustration of Polelle's "desire" to vote in a partisan primary is insufficient for standing, citing a similar case, *Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1238 (S.D. Fla. 2012) (denying standing for, and dismissing the complaint of, two registered electors – one registered without party affiliation and one registered as a member of the Republican party – who "desire[d]" to vote in a Democrat primary election without first registering as a member of the Democrat party). Doc 22 – Pg 2.

The District Court reiterated that *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), and *Jones* confirm that the associational right "to both expand and limit the persons" entitled to vote in a party's primary is conferred on the political party – not on a voter. *Osburn v. Cox*, 369 F.3d 1283, 1287-88 (11th Cir. 2004) (concluding that the Supreme Court has decided "no case[] in which individual plaintiffs alone" asserted a right to vote in a party's primary and that "the case law weighs against an individual's right to assert such a claim"). Doc 22 – Pg 2. Because no political party joined this action or otherwise objected to Florida's closed primary statute, the District Court dismissed for lack of standing.

## A. No Injury in Fact

In order to have standing, Polelle must allege "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d

1229, 1232 (11th Cir. 2008) (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004)). As previously mentioned, a comparable claim was dismissed for lack of standing upon a finding that "the associational interest Plaintiffs allege amounts to nothing more than a 'desire' to vote in a party primary to which one does not belong." *Lacasa*, 883 F. Supp. 2d at 1238 (citing *Jones*, 530 U.S. at 573 n. 5). Consequently, the *Lacasa* Court found the Plaintiffs failed to establish a "legally protected interest" giving them standing before this Court. *Id.*, citing *Lujan*, 504 U.S. at 558. "Absent this necessary 'injury in fact,' there is no justiciable or cognizable 'case or controversy' before this Court, and the Court lacks jurisdiction…" *Lacasa*, 883 F. Supp. 2d at 1238.

In the instant case, as in *Lacasa*, Polelle desires to vote in the primary of a party to which he does not belong. Whether he does not belong to the party because he prefers another party or no party at all is immaterial. His options are to join a party and participate in selecting its candidate, or not. *See Jones*, 530 U.S. at 584. Polelle does not allege that he wants to associate with a party, nor has he been prevented in any way from doing so. Further, no party has expressed an interest in associating with Polelle or permitting him to vote in its primary. Polelle has no legally protected interest at stake here.

Polelle claims to suffer an "intangible injury" from the alleged constitutional violation. Unfortunately for Polelle, the Supreme Court has already established in

20

*Jones* and *Tashjian* that he has no constitutional right to participate in a party's primary without being a member of the party. Although Polelle may experience feelings of "frustration" from the inability to realize his desire, if there is no constitutional violation, then there is no resulting intangible injury. Appellant's Opening Brief – Pg 12. Polelle's subsequent arguments regarding the futility of attempting to vote without registering, and/or being "unruly or disruptive" at a polling place to protest the status quo, are irrelevant. Appellant's Opening Brief – Pg 14. Absent an injury he has no standing.

## B.    No Causation/Redressability if No Injury

Polelle's arguments on causation and redressability mainly focus on an alleged failure by Secretary of State Byrd to sufficiently "regulate" the enforcement or implementation of Florida's closed primary system by Supervisor of Elections Turner. We do not address this issue as it does not pertain to Supervisor of Elections Turner.

Polelle cites a Northern District of Florida case for the proposition that an injury is "traceable to a defendant if the defendant has a role in implementing or enforcing the provision that causes the injury." *Nielsen v. DeSantis*, 469 F. Supp. 3d 1261, 1267 (N.D. Fla. 2020). However, in *Nielsen* the court first found there was an injury based on a different set of facts, then found such injury to be traceable to and

redressable by the Florida Secretary of State and the Supervisors of Elections. Here, there is no injury to cause or redress.

### III.    Polelle Lacks Standing Under the Overbreadth Doctrine

In Polelle's third attempt to muster standing, he asserts a theory of third-party standing pursuant to the overbreadth doctrine. He suddenly seeks, for the first time on appeal, to assert the right of a political party to open its primary to unaffiliated voters. Polelle mistakenly believes the overbreadth doctrine provides him an independent basis for standing to challenge the statute as unconstitutional on behalf of an unspecified, uninvolved political party who does not ask for this.

The overbreadth doctrine allows a plaintiff "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). However, to bring a facial challenge to a statute under the overbreadth doctrine based on the rights of others not before the court, the plaintiff must establish constitutional injury under a provision of that statute as applied to his own set of facts. *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257 (11th Cir. 2006). In *CAMP*, this Court held:

> The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that "the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action."

*Id.* at 1271 (internal citations omitted).

Polelle raises the overbreadth doctrine for the first time on appeal. No party argued overbreadth before the District Court, and the District Court did not consider or make any findings regarding this doctrine. Polelle points to one sentence of the District Court's conclusion that only a political party, not an individual voter, has standing based on the associational rights at stake in primary elections: "Because no political party joins this action or otherwise objects to Section 101.021, this action warrants dismissal for lack of standing." Doc 22 – Pg 2. Polelle attempts to take this sentence out of context and portray it as relating to a statement in his response to Defendants' Motions to Dismiss that the closed primary statute is unconstitutional because "a political party in Florida would not be allowed to open up its primary to voters not affiliated with a party even if the political party wanted to." Doc 14 – Pg 17. There is no support in the record for the assertion that either the District Court or Polelle made these statements with a view toward the overbreadth doctrine.

Second, even if the issue of overbreadth standing had been raised, Polelle is unable to establish any constitutional injury from the statute as applied to himself. As discussed at length elsewhere, Polelle has suffered no cognizable injury. Nothing prevents him from registering with a party and voting in a party primary if he wishes to do so. Therefore, based on this Court's holding in *CAMP*, he may not bring a facial challenge to the statute on behalf of one or more political parties whose rights he

23

claims are violated by the statute. Pursuant to *CAMP*, the overbreadth exception to the prudential rule against third-party standing is inapplicable here because Polelle lacks Article III standing in his own right:

> The overbreadth doctrine provides an exception to the ordinary prudential considerations of judicial administration, not an exception to the irreducible requirements of the Constitution. ... The overbreadth doctrine, which is judicially created, cannot alter the requirements of standing, under Article III, because the Judiciary cannot abrogate the Constitution.

*CAMP*, 451 F.3d at 1271 (internal citations omitted).

The question of whether the Florida closed primary statute could withstand a different constitutional challenge by a political party is not before this Court. No political party has brought such a challenge, and third-party standing is disfavored for good reason:

> The Supreme Court has explained that one of the reasons behind the prudential rule against third-party standing is that courts should avoid adjudicating the rights of parties who may not wish to assert those rights, and that prohibiting third-party standing will generally improve the quality of litigation and judicial decision-making in that the most effective advocates of the rights at issue will be present to advocate for them.

*Four Seasons Marina Rentals, Inc. v. City of Osage Beach, Mo,* No. 08-4221-CV-C-NKL, 2009 WL 1543766 (W.D. Mo. June 3, 2009) (internal citations omitted).

Polelle's speculation as to the potential arguments of third parties who have not sought to challenge Florida's closed primary statute are not relevant and will not be

addressed here. Polelle lacks standing under the overbreadth doctrine to make such arguments.

### IV.    Florida's Closed Primary System Does Not Violate Polelle's First Amendment Rights

The District Court held that even if Polelle had standing, he failed to state a claim. The District Court cited U.S. Supreme Court precedents directly on point in dismissing Polelle's Complaint. A dismissal is warranted if, assuming the facts alleged in the plaintiff's complaint are true, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). As a matter of settled law, Polelle has no associational interest in selecting the candidate of a group to which he does not belong:

> *Jones*, 530 U.S. at 581, rejects the "adulterat[ion of a political party's] candidate-selection process ... by opening [the process] to persons wholly unaffiliated with the [political] party."

Doc 22 – Pg 3.

Polelle does not wish to affiliate with a political party but nevertheless claims an interest in voting in party primaries because one of the candidates chosen in a major party's primary is likely to be elected in the subsequent general election. This type of claim was squarely addressed by the Supreme Court in *Jones*. Like Polelle, the Respondents in *Jones* supported an open or "blanket" primary. The Supreme Court rejected this argument, reasoning:

These persons are disenfranchised, according to respondents, because under a closed primary they are unable to participate in what amounts to the determinative election—the majority party's primary; the only way to ensure they have an "effective" vote is to force the party to open its primary to them. This also appears to be nothing more than reformulation of an asserted state interest we have already rejected—recharacterizing nonparty members' keen desire to participate in selection of the party's nominee as "disenfranchisement" if that desire is not fulfilled. We have said, however, that a "nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications."

*Id.* at 583 (internal citations omitted). The *Jones* Court then concluded:

The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon his freedom of association, whereas compelling party members to accept his selection of their nominee is a state-imposed restriction on theirs.

*Id.* at 584.

Similarly, in *Clingman v. Beaver*, 544 U.S. 581 (2005), Republican and Democratic registered voters challenged Oklahoma's restriction on their ability to remain registered as such and vote in the Libertarian Party of Oklahoma's (LPO) primary. The Court again denied that this interest is a constitutionally protected one:

Their interest is in casting a vote for a Libertarian candidate in a particular primary election, rather than in banding together with fellow citizens committed to the LPO's political goals and ideas.

*Id.* at 588 (internal citations omitted).

The District Court reviewed longstanding precedent and found that nothing prevents Polelle from joining a party if he wants to vote in its primary. Specifically,

"until twenty-nine days before a primary election Polelle may change his registration to a different political party and may vote in the primary election for his new political party." Doc 22 – Pg 3. The District Court correctly concluded:

> Under *Jones*, Polelle retains the same choice as every other Florida elector. He may affiliate with a political party and vote in that party's primary or he may register without party affiliation. But Polelle may not burden another's First Amendment freedom of association by voting in a party primary without affiliating with that party.

Doc 22 – Pg 3.

Polelle erroneously argues he is being forced to "subsidize" the speech of political parties he does not support as a municipal taxpayer. The fact that primary and general elections are publicly funded does not somehow create a First Amendment interest for Polelle as a taxpayer, nor does it give Polelle a right to infringe upon the associational rights of others. The *Jones* Court noted: "We have recognized, of course, that States have a major role to play in structuring and monitoring the election process, including primaries." *Jones*, 530 U.S. at 572 (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)). The Supreme Court went on to reiterate it is "too plain for argument" that "a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *Id*. at 572 (citing *American Party of Tex. v. White*, 415 U.S. 767, 781 (1974)). Correspondingly, Florida requires a primary election for

nomination of candidates of political parties to be held on the Tuesday 11 weeks prior to the general election. Fla. Stat. § 100.061.

Even if Polelle had an associational interest, requiring voters to register with a party prior to participating in the party's primary minimally burdens associational rights, and the state's important regulatory interests in efficiently organizing and administering elections justify such reasonable, nondiscriminatory restrictions. *Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1239 (S.D. Fla. 2012). Polelle remains free to exercise his First Amendment rights to criticize political parties, encourage support for non-party or write-in candidates, and/or advocate for electoral reforms. However, he cannot engage this Court to judicially effectuate his political desires. As the *Lacasa* Court observed: "Plaintiffs' requested relief may lie, if at all, in the democratic process, and that is a system in which, at least at this juncture, this Court will not intervene." *Id*. at 1244.

The *Lacasa* plaintiffs sought declaratory and injunctive relief against the Miami-Dade County Supervisor of Elections to allow them to vote in the 2012 Democratic Primary for State Attorney as non-party voters. The Southern District dismissed for lack of standing, finding the non-party members did not have an associational interest in voting in the party's primary, and even "[a]ssuming arguendo that Plaintiffs have sufficiently alleged a First Amendment associational interest... the Court finds that the State of Florida's interests outweigh Plaintiffs'

limited interest in voting in a primary of a party to which they do not belong." *Id*. at 1239. Thus, Polelle's invocation of strict or "exacting" scrutiny based on factually dissimilar case law is incorrect. If he had an associational interest, it would be weighed against the government's interests in using the primary format, which the Supreme Court has long recognized as crucial to the democratic process. *See Jones*, 530 U.S. at 572.

The cases Polelle cites in this section of his Brief are not on point and do not support his position. For example, he fails to show he is discriminated against in any way, such as racially as in *Terry v. Adams*, 345 U.S. 461 (1953), or based on population as in *Gray v. Sanders*, 372 U.S. 368 (1963) and *Moore v. Ogilvie,* 394 U.S. 814 (1969), or that anyone is altering or falsely counting votes as in *United States v. Classic*, 313 U.S. 299 (1941), or that a filing fee is required as in *Morse v. Republican Party of Va.,* 517 U.S. 186 (1996).

The cases that are directly on point, including those cited herein and by the District Court, provide that Polelle's action to force political parties to accept his choice of their nominee as a non-party member was dead upon arrival as a matter of law. As the Supreme Court has repeatedly indicated, a key feature of American democracy is the right of citizens to band together in promoting among the electorate candidates who espouse their political views. The closed primary system allows citizens to do just that and protects their associational rights. The Supreme Court and

federal courts have long upheld such a system as constitutional in the face of challenges such as Polelle's. Polelle fails to state a claim for violation of his First Amendment rights.

## V.    Florida's Closed Primary System Does Not Violate Polelle's Fourteenth Amendment Rights

The District Court correctly held that Polelle failed to state a claim for a violation of his Fourteenth Amendment rights, again relying on longstanding precedent. Florida's closed primary system applies to Polelle with equal force and effect as to all other eligible Florida voters:

> Under *Jones*, Polelle retains the same choice as every other Florida elector. He may affiliate with a political party and vote in that party's primary or he may register without party affiliation. But Polelle may not burden another's First Amendment freedom of association by voting in a party primary without affiliating with that party.

Doc 22 – Pg 3.

The Equal Protection Clause "requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006) (quoting *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (per curiam)). In general, Polelle has the same rights as every other Florida voter. If he registers with a party, he may vote in its primary. Fla. Stat. § 101.021. Polelle does not allege otherwise; he merely expresses a desire to dispense with the party registration requirement.

Further, Polelle is not in fact similarly situated to voters who have chosen to register with and have their views represented by a political party. Polelle, by his own admission, does not wish to associate with any political party and has not registered with one. Thus, his claim that he is treated differently from party-registered voters falls far short of an equal protection violation. "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Campbell*, 434 F.3d at 1314. The Eleventh Circuit advised that "[t]o maintain th[e] focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with rigor." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). As the *Jones* Court commented:

> In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.

*Jones*, 530 U.S. at 575.

Polelle's interests in voting in a party's primary are not the same, and likely even conflict with, those of party members. He is not similarly situated to party-registered voters. Even so, he has the same opportunity as any other Florida voter to register with a party and vote in its primary. Based on the above, Polelle fails to state an equal protection claim. We do not address Polelle's contention that Article VI

31

Section 5(B) of the Florida Constitution somehow arbitrarily and capriciously exacerbates the alleged discrimination, as there is no discrimination to exacerbate.

**VI.** **Supreme Court Precedent Recognizes the Associational Rights of Political Parties and Rejects Voter Arguments that Such Rights Are Incompatible With Their First Amendment and Equal Protection Rights**

In the final section of his Brief, Polelle finally addresses key Supreme Court precedent on point, including *Jones*, and unconvincingly attempts to distinguish it. The essential holdings from *Jones*, *Tashjian*, and other landmark cases are addressed in the previous sections herein, and in the District Court's Order. We will not repeat them again here. Polelle devotes the majority of this section of his brief to exploring various alternatives to the closed primary system that he would personally find appealing, but for which no political party in Florida actually or even allegedly advocates. Polelle continues to miss the point that while a political party would arguably have a right to allow non-affiliated voters to participate in its primary, that choice rests solely with the party. As an individual voter and/or taxpayer he lacks standing and fails to state a claim.

## CONCLUSION

Wherefore, Sarasota County Supervisor of Elections Ron Turner, Defendant-Appellee, requests this Court to affirm the District Court's order dismissing Polelle's Complaint for lack of standing and failure to state a claim.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

### 1. Type-Volume

This document complies with the word limit of FRAP 32(a)(7) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 7,178 words.

### 2. Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

(s)_____

Attorney for Appellee, Ron Turner

Dated: March 27, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

through the Court's CM/ECF system, served via electronic service on participants in

the case registered as CM/ECF users, and served via U.S. Mail, postage prepaid, on

Michael J. Polelle, 1102 Ben Franklin Drive, Unit 511, Sarasota, FL 34236, on this

27th day of March, 2023.

DAVID A. WALLACE, ESQ.
Florida Bar No.  0608386
dwallace@bgk.law
ASHLEY GAILLARD, ESQ.
Florida Bar No. 1019208
agaillard@bgk.law
783 South Orange Ave., Suite 300
Sarasota, Florida 34236
Telephone: 941-556-9030
Attorneys for Appellee, Ron Turner