No. 22-14031-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MICHAEL J. POLELLE,
*Plaintiff/Appellant,*

v.

CORD BYRD, in his official capacity of Secretary of State of Florida, and
RON TURNER, in his official capacity as Supervisor of Elections for Sarasota
County, Florida,
*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF FLORIDA
CASE NO.: 8:22-cv-1301-SDM-AAS

**APPELLEE FLORIDA SECRETARY OF STATE'S APPENDIX**

ASHLEY E. DAVIS
*Deputy General Counsel*
Florida Bar No.: 48032
Ashley.Davis@dos.myflorida.com

FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 South Bronough Street, Suite 100
Tallahassee, FL 32399
(850) 245-6536 telephone
(850) 245-6127 facsimile

*Counsel for Defendant/Appellee*
*Florida Secretary of State*

# INDEX OF APPENDIX

<u>DOCUMENT</u> <u>TAB</u>

District Court Docket Sheet ……………………………………………… A

Complaint …………………………………………………………………… 1

Sarasota Supervisor of Elections
Amended Motion to Dismiss …………………………………………….. 12

Florida Secretary of State
Amended Motion to Dismiss ……………………………………………… 13

Plaintiff's Response to
Amended Motions to Dismiss
by Florida Secretary of State and
Sarasota Supervisor of Elections ……………………………………… 14

Order Granting Amended Motions to Dismiss ………………………... 22

Plaintiff's Notice of Appeal …………………………………………. 23

Certificate of Service

Tab A

22351 APPEAL, CLOSED

# U.S. District Court
# Middle District of Florida (Tampa)
# CIVIL DOCKET FOR CASE #: 8:22-cv-01301-SDM-AAS

Polelle v. Byrd et al                                      Date Filed: 06/06/2022
Assigned to: Judge Steven D. Merryday                      Date Terminated: 11/03/2022
Referred to: Magistrate Judge Amanda Arnold Sansone        Jury Demand: None
Case in other court: 11th Circuit, 22-14031-DD             Nature of Suit: 441 Civil Rights: Voting
Cause: 42:1983 Civil Rights Act                            Jurisdiction: Federal Question

## Plaintiff
**Michael J. Polelle**                    represented by   **Michael J. Polelle**
                                                           1102 Ben Franklin Drive
                                                           Unit 511
                                                           Sarasota, FL 34236
                                                           941-388-1840
                                                           PRO SE

V.

## Defendant
**Cord Byrd**                             represented by   **Ashley E. Davis**
*solely in his official capacity as Florida*              Florida Department of State
*Secretary of State*                                       500 S Bronough St Ste 100
                                                           Tallahassee, FL 32399-0250
                                                           850-245-6531
                                                           Email: ashley.davis@dos.myflorida.com
                                                           *ATTORNEY TO BE NOTICED*

## Defendant
**Ron Turner**                            represented by   **Ashley Elizabeth Gaillard**
*solely in his official capacity as Supervisor*            Bentley Goodrich Kison
*or Elections for Sarasota County*                         783 S Orange Ave
                                                           Sarasota, FL 34236
                                                           941-556-9030
                                                           Email: agaillard@bgk.law
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Morgan R. Bentley**
                                                           Bentley & Bruning, PA
                                                           783 S Orange Ave Ste 300
                                                           Sarasota, FL 34236
                                                           941-556-9030
                                                           Fax: 941/312-5316
                                                           Email: mbentley@bentleyandbruning.com
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|

| | | |
|---|---|---|
| 06/06/2022 | 1 | COMPLAINT *(Declaratory and Injunctive Relief Requested)* against Cord Byrd, Ron Turner Filing fee $402.00, receipt number TPA66623 filed by Michael J. Polelle. (Attachments: # 1 Civil Cover Sheet)(MCB) (Entered: 06/06/2022) |
| 06/06/2022 | 2 | SUMMONS issued as to Cord Byrd, Ron Turner. (MCB) (Entered: 06/06/2022) |
| 06/07/2022 | 3 | NOTICE of Local Rule 1.07(c)and Local Rule 3.02(a)(2).<br><br>**-Local Rule 1.07(c)** requires lead counsel to *promptly* file a **Notice of a Related Action** that identifies and describes any related action pending in the Middle District or elsewhere.<br><br>**-Local Rule 3.02(a)(2)** requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge.<br><br>**(Signed by Deputy Clerk). (DAY) (Entered: 06/07/2022)** |
| 06/20/2022 | 4 | NOTICE of Appearance by Ashley E. Davis on behalf of Cord Byrd (Davis, Ashley) (Entered: 06/20/2022) |
| 06/23/2022 | 5 | RETURN of service executed on 6/17/2022 by Michael J. Polelle as to Cord Byrd. (CTR) (Entered: 06/23/2022) |
| 06/27/2022 | 6 | RETURN of service executed on 6/17/2022 by Michael J. Polelle as to Cord Byrd. (Attachments: # 1 Mailing Envelope)(CTR) (Entered: 06/27/2022) |
| 07/05/2022 | 7 | RETURN of service executed on 6/22/22 by Michael J. Polelle as to Ron Turner. (Attachments: # 1 Mailing Envelope)(LNR) (Entered: 07/06/2022) |
| 07/08/2022 | 8 | MOTION to Dismiss Complaint by Cord Byrd. (Davis, Ashley) (Entered: 07/08/2022) |
| 07/12/2022 | 9 | First MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) (Entered: 07/12/2022) |
| 07/12/2022 | 10 | ***TERMINATED-COUNSEL NOTIFIED TO RE-FILE WITH THE CORRECT EVENT CODE*** MOTION to Alter Judgment , MOTION to Appoint Counsel , MOTION to Appoint ad Litem , First MOTION to Supplement 9 First MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) Motions referred to Magistrate Judge Amanda Arnold Sansone. Modified on 7/13/2022 (CTR). (Entered: 07/12/2022) |
| 07/13/2022 | 11 | ***TERMINATED-COUNSEL NOTIFIED TO RE-FILE WITH CORRECT EVENT CODE***Amended MOTION to Vacate, Set Aside or Correct Sentence (2255) filed by Ron Turner.(Bentley, Morgan) Modified on 7/13/2022 (CTR). (Entered: 07/13/2022) |
| 07/13/2022 | 12 | Amended MOTION to Dismiss Complaint by Ron Turner. (Bentley, Morgan) (Entered: 07/13/2022) |
| 07/14/2022 | 13 | Amended MOTION to Dismiss Complaint by Cord Byrd. (Davis, Ashley) (Entered: 07/14/2022) |
| 07/18/2022 | 14 | RESPONSE in Opposition re 13 Amended MOTION to Dismiss Complaint , 12 Amended MOTION to Dismiss Complaint filed by Michael J. Polelle. (BD) (Additional |

| | | attachment(s) added on 7/21/2022: # 1 Signed Response, # 2 Mailing Envelope) (CTR). (Entered: 07/18/2022) |
|---|---|---|
| 07/18/2022 | 15 | **ORDER denying as moot 8, 9--motions to dismiss. Signed by Judge Steven D. Merryday on 7/18/2022. (GG)** (Entered: 07/18/2022) |
| 08/02/2022 | 16 | CORPORATE Disclosure Statement by Cord Byrd. (Davis, Ashley) (Entered: 08/02/2022) |
| 08/02/2022 | 17 | CERTIFICATE of interested persons and corporate disclosure statement by Ron Turner. (Gaillard, Ashley) (Entered: 08/02/2022) |
| 08/02/2022 | 18 | ***TERMINATED--DISCOVERY***Witness List by Ron Turner. (Gaillard, Ashley) Modified on 8/3/2022 (CTR). (CTR). (Entered: 08/02/2022) |
| 08/02/2022 | 19 | CERTIFICATE of interested persons and corporate disclosure statement (unsigned) by Michael J. Polelle. (BD) (Entered: 08/03/2022) |
| 08/05/2022 | 20 | CERTIFICATE of interested persons and corporate disclosure statement by Michael J. Polelle.(signed) (Attachments: # 1 Mailing Envelope)(CTR) (Additional attachment(s) added on 8/16/2022: # 2 Cover Letter) (CTR). (Entered: 08/05/2022) |
| 08/16/2022 | 21 | ENTERED IN ERROR(CTR)(CTR). (Entered: 08/16/2022) |
| 11/03/2022 | 22 | **ORDER granting 12, 13--motions to dismiss; dismissing the action. Signed by Judge Steven D. Merryday on 11/3/2022. (WBW)** (Entered: 11/03/2022) |
| 11/30/2022 | 23 | NOTICE OF APPEAL as to 22 Order on Motion to Dismiss, by Michael J. Polelle. Filing fee $ 505, receipt number TPA067642. (CTR) (Entered: 12/01/2022) |
| 11/30/2022 | 24 | TRANSCRIPT information form filed by Michael J. Polelle re 23 Notice of Appeal. No transcript(s) requested. (CTR) (Entered: 12/01/2022) |
| 12/01/2022 | 25 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 23 Notice of Appeal. (CTR) (Entered: 12/01/2022) |
| 01/24/2023 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for the purposes of this appeal re: 23 Notice of Appeal. All documents are imaged and available for the USCA to retrieve electronically. USCA number: 22-14031-DD (CTR) (Entered: 01/24/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/23/2023 10:22:57 | | |
| **PACER Login:** | ashleydavis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cv-01301-SDM-AAS |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Tab 1

## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

MICHAEL J. POLELLE

*Plaintiff*

8:22-CV-1301-SDM-AAS
CASE NO _____

V.

**COMPLAINT**

CORD BYRD, solely in his official capacity

as Florida Secretary of State

and

RON TURNER, solely in his official capacity

as Supervisor of Elections for Sarasota

County

*Defendants*

_____



**DECLARATORY AND INJUNCTIVE RELIEF REQUESTED**

**CHALLENGE TO THE CONSTITUTIONALITY OF § 101.021 FLA. STAT.**

**(2021) AND ART.VI § 5(B) OF THE FLORIDA CONSTITUTION**

## NATURE OF THE CASE

1.   The Plaintiff, Michael J. Polelle, files this Complaint under 42 U.S.C. § 1983 against Defendants, Cord Byrd, Florida Secretary of State, and Ron Turner, Supervisor of Elections for Sarasota County, Florida solely in their official capacities and requests declaratory and injunctive relief.

## JURISDICTION AND VENUE

2.   This court has jurisdiction under §§ 1331 and 1343(3) of the Federal Rules of Civil Procedure.

3. Venue is proper under 42 U.S.C. § 1391(b) (1) (2).

## THE PARTIES

4. Michael J. Polelle, an emeritus professor of law, is a citizen of Florida and a resident of the City of Sarasota in the County of Sarasota.

5. Cord Byrd, as Secretary of State for Florida, oversees primary and general elections in Florida. Pursuant to §§ 97.012 Fla.Stat. (1)- (2), (11), (16) (2021). This

2

Defendant is the "chief election officer of the state" whose duties include
ensuring "uniformity in the interpretation and implementation of the election
laws" ; the development of "uniform standards for the proper and equitable
implementation of the registration laws" for Florida's statewide voter
registration system created and administered by this Defendant as required by
the Help America Vote Act of 2002;  and  the use of "written directions and
opinions to the supervisors of elections on the performance of their official
duties" with the authority to sue Florida's Supervisors of Elections to enforce
their duties as provided by law.

6. Ron Turner, is the Supervisor of Elections for Sarasota County, Florida, whose
duties require he "ensure that any voter registration system used by the
Supervisor for administering his or her duties" complies with "the specifications
and procedures established by the rules of the department [Florida Dept. of
State]"under §§ 97.021 and 98.01 Fla.Stat. (2021). This Defendant also hires
election boards of poll workers who decide "all questions that may arise before
the members of an election board" and is "responsible for the attendance and
diligent performance" of the duties imposed on these poll workers under §
102(1) (a) Fla.Stat. (2021).

3

## FACTUAL ALLEGATIONS7

7.  Over 3 million Florida voters are registered with "No Party Affiliation" and specifically in Sarasota County, where the Plaintiff resides, over 95 thousand voters are registered with "No Party Affiliation."

8. Section 101.102 Fla.Stat. (2021) provides:

"In a primary election a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other. It is unlawful for any elector to vote in a primary for any candidate running for nomination from a party other than that in which such elector is registered."

9. Ever since Plaintiff's Florida registration of "No Party Affiliation" on August, 26, 2011, when he had to declare his party affiliation or lack of affiliation in order to vote in Florida's elections, Defendants have prohibited him from voting in any party primary by enforcement of § 101.102 Fla.Stat. (2021). They have done this despite his  desire to do so  because of what is commonly termed  in Florida a "closed primary" system excluding those who are not party members.

10. Unless this Court intervenes, Defendants will continue to enforce § 101.102 Fla.Stat. (2021)  so as to prohibit Plaintiff from voting in the next Florida party primaries scheduled for August 23, 2022 and the next Presidential Preference Primary scheduled for March 10, 2024.

4

11. In violation of 42 U.S.C. § 1983, Defendants have jointly or severally subjected and will subject Plaintiff to the deprivation of his rights, privileges, and immunities secured by the Constitution of the United States by enforcing § 101.102 Fla. Stat. (2021) and causing him injury by the suppression of his primary vote in selecting political candidates who are obligated to represent all citizens of the United States and Florida regardless of their party affiliation or non-party affiliation.

### FIRST CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983

**(Violation of the First Amendment Freedom from Compelled Speech or Compelled Association)**

12. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 12 as though fully set forth herein.

13. Plaintiff is obligated by law, and against his choice, to financially support and subsidize the" closed primary" system established by § 101.102 Fla. Stat (2021), set out in in Paragraphs 8 and 9 above, by paying annually an ad valorem property tax to the General Fund of the Sarasota County Commission and drawn upon by Defendant, Ron Turner, the Supervisor of Elections in Sarasota County, where Plaintiff is registered and pays his county taxes. This Defendant uses the revenue from this tax to finance the costs of operating primary elections in Sarasota County, including those in which Plaintiff is legally forbidden to

participate because of his political beliefs and principled decision not to associate with or become a member of any political party.

14. In the latest available year of 2020, the Defendant, Ron Turner, Supervisor of Elections in Sarasota County, spent a total of $752, 307.56 to hold the Presidential Preference Primary of March 17, 2020 and $1,000,043.33 for the remaining primaries on August 18, 2020. These expenditures were taken from the General Fund set up the Sarasota County Commission for "general government services," including primary elections, with ad valorem property tax revenues collected from all Sarasota County taxpayers, including those registered as "Not Politically Affiliated."

15. "Not Politically Affiliated" registered voters in Sarasota County, including the Plaintiff, number approximately one-fourth of the total number of county registered voters. Yet these voters, including Plaintiff, were all prohibited from voting in party primaries which their tax dollars support because of their political beliefs and right not to associate with political parties.

16. By enforcing § 101.102 Fla.Stat. (2021)  Defendants, Cord Byrd and Ron Turner, have jointly and severally prevented Plaintiff from voting in state-supported primaries because of his political beliefs and right not to associate with political parties.  Defendants have therefore violated his First Amendment

rights as discussed herein by compelling him to subsidize and support with his

taxes the private speech of political parties with which he refuses to support or

associate.

## SECOND CLAIM FOR RELIEF UNDER SEC. 42 U.S.C. § 1983

**(Violation of the Fundamental Right to Vote Provided by the Free Speech
Clause of the First Amendment of the United States Constitution)**

17. Plaintiff incorporates by reference the allegations contained in Paragraphs 1

through 12 as though fully set forth herein.

18. The First Amendment represents the voice of citizens in the most effective

way possible when it protects the fundamental right to express a political

opinion by voting. The freedom to vote is a First-Amendment activity at the very

heart of our democratic system of government.

19. The right to vote in a primary election and the right to vote in a general

election have substantially and effectively become part of an integral and unified

electoral system in Florida, as indicated in (A)-(E) of this Paragraph below, with

the result that the right of Plaintiff to vote in a primary is as fully protected by

the First Amendment as is his right to vote in a general election:

(A) Article VI § 5 (b) Fla. Const. , popularly known as the Universal

Primary Contest, provides: "If all candidates for an office have the same party

affiliation and the winner will have no opposition in the general election, all

7

qualified electors, regardless of party affiliation, may vote in the primary
elections for that office."

(B) Article VI § 7 Fla. Const. provides in pertinent part: "It is the policy of
this state to provide for state-wide elections in which all qualified candidates
may compete effectively."

(C) Section 100.011(3) Fla.Stat.(2021) provides: "The expenses of holding all
elections for county and state officers necessarily incurred shall be paid out of the
treasury of the county or state, as the case may be, in the same manner and by
the same officers as in general elections."

(D) Section 100.191 Fla.Stat. (2021) provides in pertinent part: "All laws
that are applicable to general elections are applicable to special elections or
special primary elections to fill a vacancy in office or nomination."

(E) Section 105.031 Fla. Stat. (2021) permits all registered voters, including
those "Not Politically Affiliated" to vote in primary elections for county and
circuit judges as well as in any general election for such judges.

20. As a result of the evolution of Florida primary elections into a unified and
integrated electoral system the deprivation of the right to vote in a primary
election because of party affiliation or the lack of party affiliation is governed by
the same First Amendment rights that apply to general elections in Florida.

20. By enforcing the closed-primary system of Florida, as mandated in § 101.102 Fla. Stat. (2021), set out in Paragraphs 8 and 9 above, the Defendants, in an unconstitutional Hobson's choice, have forced the Plaintiff, registered as "Not Politically Affiliated" as a matter of principle, to either forfeit his fundamental right to vote in elections with the same effectiveness as party voters or else forfeit his other fundamental right not to associate or identify himself with political parties.

### THIRD CLAIM FOR RELIEF UNDER 42 U.S.C. SEC 1983
### (Violation of the Fourteenth Amendment Equal Protection Clause)

21. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 21 as though fully set forth herein.

22. Plaintiff belongs to a class of qualified voters registered as "Not Politically Affiliated,", who despite being similarly situated to another class of qualified voters registered to a political party, are invidiously discriminated against because of Florida's closed-primary system established by §101.021, Fla. Stat. (2021), set out above in Paragraph 8P. This closed-primary system cannot be justified under the strict, exacting, or heightened scrutiny required where the fundamental rights of voting and political non-affiliation under the First Amendment are at stake.

23. As a member of this class of voters registered as "Not Politically Affiliated,"

Plaintiff is also being unlawfully discriminated against because of the arbitrary

and capricious nature of the Universal Primary Contest provision found in Art.

VI § 5(b) of the Florida Constitution, set out in Paragraph 19 (A) above. Because

of judicial interpretation and devious manipulation by political parties in the use

of "write- in" candidates, Art. VI, § 5(b) of the Florida Constitution prevents

Plaintiff, and other "Not Politically Affiliated" voters,  from having the same

opportunity to affect  the outcome of a general election to the same extent as

members of political parties. This system of Universal Primary Contests cannot

be justified under the strict, exacting, or heightened scrutiny required where the

fundamental rights of voting and political non-affiliation are at stake.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Michael J. Polelle, respectfully requests the following

relief:

A. A declaration that § 101.102 Fla.Stat. (2021) and Art. VI § 5(b) of the Florida

Constitution violate the First and Fourteenth Amendments of the United States

Constitution  both facially and as applied to Plaintiff insofar as they prevent

Plaintiff from voting in Florida election primaries solely because of his political

choice to be registered as "Not Politically Affiliated."

10

B. A permanent injunction prohibiting Defendants, their agents, employees, successors, and all persons acting in concert or participation with them from enforcing § 101.102 Fla.Stat.(2021) and Art. VI § 5(b)of the Florida Constitution or any other statute, law, regulation, or custom which prohibits Plaintiff from voting in future Florida election primaries solely because of his choice to remain "Not Politically Affiliated."

C. Any other relief this Court deems just and proper.

DATED: June 6, 2022        Respectfully Submitted,

By: _____

Michael J. Polelle, Pro Se.

1102 Ben Franklin Drive Unit 511

Sarasota, Florida 34236

(941) 388-1840

mpolel2@uic.edu

11



**FedEx**
Office

1901 S Tamiami Trail Ste A
Sarasota, FL 34239-3624
941.955.1157

June 3, 2022 10:49 AM
Receipt #: SRQK00402607

| | | | |
|---|---|---|---|
| 0330<br>BW 1S on 24# Wht | 44 | @ | $0.2400 T |
| 0078<br>Machine Stapling | 4 | @ | $0.0300 T |

| | |
|---|---|
| Retail Subtotal | $10.68 |
| Tax | $0.75 |
| **TOTAL** | **$11.43** |
| Cash | $20.00 |
| Total Tender | $20.00 |
| Change Due | ($8.57) |

Tell us how we're doing:
fedex.com/welisten

By submitting your project to FedEx
Office or by making a purchase in the
FedEx Office store, you agree to all
the FedEx Office terms and conditions,
including limitations of liability,
located at fedex.com/
officeserviceterms or you may request
a copy of our terms and conditions,
which will be made available to you
upon request.

▯SRQK004202206030 2607▯

JS 44 (Rev. 08/18)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
POLELLE, MICHAEL J.

SARASOTA COUNTY
**(b)** County of Residence of First Listed Plaintiff    FLORIDA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
PRO SE
1102 BEN FRANKLIN DRIVE UNIT 511
SARASOTA, FLORIDA 34236  (941)328-1840

**DEFENDANTS**
FLORIDA DEPT. OF State, Cord Byrd,
Secretary of State and Sarasota
County, RON TURNER, Supervisor of
County of Residence of First Listed Defendant    ELECTIONS
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | Corrupt Organizations ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | Act | ☐ 861 HIA (1395ff) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | Exchange |
| | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | | Agency Decision ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USCA 1983
Brief description of cause:
Deprivation OF CONSTITUTIONAL RIGHT TO VOTE IN PRIMARIES

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    **DEMAND $**    CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☒ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE                                    SIGNATURE OF ATTORNEY OF RECORD   PRO SE
Michael J Polelle

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

Tab 12

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **MICHAEL J. POLELLE,**<br><br>      Plaintiff,<br><br>v.<br><br>**CORD BYRD,** solely in his official capacity as Florida Secretary of State; and<br><br>**RON TURNER,** solely in his official capacity as Supervisor of Elections for Sarasota County,<br><br>      Defendants. | **CASE NO.:**   **8:22-CV-1301-SDM-AAS** |

## AMENDED MOTION TO DISMISS

Defendant **RON TURNER,** Sarasota Supervisor of Elections (hereinafter, "Supervisor") moves to dismiss the Complaint filed by Plaintiff, **MICHAEL J. POLELLE** (hereinafter, "Plaintiff"), and states:

## I.   BACKGROUND

Plaintiff challenges the constitutionality of Fla. Stat. § 101.021 and Art. VI § 5(B) of the Florida Constitution. He asks the Court for a declaration that these laws are unconstitutional, and for a permanent injunction against the enforcement of these laws, which comprise Florida's "closed primary" system:

1

> In a primary election a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other. It is unlawful for any elector to vote in a primary for any candidate running for nomination from a party other than that in which such elector is registered.

*Fla. Stat. § 101.021.*

> If all candidates for an office have the same party affiliation and the winner will have no opposition in the general election, all qualified electors, regardless of party affiliation, may vote in the primary elections for that office.

*Fla. Const. Art. VI § 5(B).*

Plaintiff is a Sarasota, Florida voter registered as "Not Politically Affiliated." As such, under Florida law he may not vote in a primary election unless all candidates for an office have the same party affiliation and the winner will have no opposition in the general election. *Id.* However, he can change his registration up to 29 days before an election to that of the party whose candidate he wishes to participate in selecting through its primary. *Fla. Stat. § 97.055.* Instead, he asks this Court to strike down Florida's closed primary system to vindicate his personal preference not to affiliate with political parties.

The Supervisor moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rule 12(b)(6) and for lack of jurisdiction pursuant to Federal Rule 12(b)(1).

## II.   **INTRODUCTION**

Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In asking the Court to declare the

2

closed primary unconstitutional, Plaintiff disregards U.S. Supreme Court precedent directly on point. He invites the court to violate the First Amendment rights of Florida citizens who wish to band together in promoting among the electorate candidates who espouse their political views. He has no associational interest in selecting the candidate of a group to which he does not belong. Even if he did, requiring voters to register with a party prior to participating in the party's primary minimally burdens associational rights, and the state's important regulatory interests in efficiently organizing and administering elections justify such reasonable, nondiscriminatory restrictions.

Additionally, Plaintiff lacks standing to bring this action and his Complaint must be dismissed for this reason as well. Plaintiff cannot establish a legally cognizable injury, including as a taxpayer. Plaintiff has no constitutionally recognized interest at stake, and even if he did, that interest would be outweighed in balancing others' constitutional rights and the government's interest in holding orderly and effective elections.

Finally, Plaintiff has not notified the Florida Attorney General's Office of his constitutional challenge as required by Rule 5.1. However, correction of this oversight would be futile since Plaintiff's claim is already subject to dismissal on the merits and for lack of standing.

### III.   ARGUMENT AND MEMORANDUM OF LAW

#### A. Plaintiff fails to state a claim.

In determining whether to grant a motion to dismiss, the Court should consider the allegations as true, and the complaint should be construed in the light most favorable to the non-moving party. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The Court should not assume that the Plaintiff can prove facts that were not alleged. *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A. et al.*, 711 F. 2d 989, 995 (11th Cir. 1983). A dismissal is warranted if, assuming the facts alleged in the Plaintiff's complaint are true, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Plaintiff claims his First Amendment rights of free speech and association are violated when he is "forced to subsidize" party primaries through his county ad valorem property taxes, which go into the County's general revenue fund drawn on by Defendant for the costs of holding elections. Second, Plaintiff argues the closed primary system itself violates his First Amendment rights. Finally, Plaintiff asserts that Florida's closed primary system violates the Equal Protection Clause of the Fourteenth Amendment. These claims all implicate settled principles of law, such that even if Plaintiff's factual allegations are taken as true, he is not entitled to any relief.

#### 1. Plaintiff has no constitutional right to participate in a party's primary election without registering with the party.

4

Plaintiff claims he does not wish to affiliate with a political party but nevertheless has an interest in voting in primaries because one of the candidates chosen in a major party's primary is likely to be elected in the subsequent general election. This type of claim was squarely addressed by the Supreme Court in *California Democratic Party v. Jones*, 530 U.S. 567 (2000). Like Plaintiff, the Respondents in *Jones* supported an open or "blanket" primary "upon the proposition that primaries play an integral role in citizens' selection of public officials. As a consequence, they contend[ed], primaries are public rather than private proceedings, and the States may and must play a role in ensuring that they serve the public interest." *Id.* at 572. The Supreme Court rejected this argument, reasoning:

> These persons are disenfranchised, according to respondents, because under a closed primary they are unable to participate in what amounts to the determinative election—the majority party's primary; the only way to ensure they have an "effective" vote is to force the party to open its primary to them. This also appears to be nothing more than reformulation of an asserted state interest we have already rejected—recharacterizing nonparty members' keen desire to participate in selection of the party's nominee as "disenfranchisement" if that desire is not fulfilled. We have said, however, that a "nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." *Tashjian*, 479 U.S., at 215–216, n. 6, 107 S.Ct. 544 (citing *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), and *Nader v. Schaffer*, 417 F.Supp. 837 (D.Conn.), summarily aff'd, 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976)).

*Id.* at 583.

The *Jones* Court then concluded: "The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon *his* freedom of association, whereas compelling party members to accept his selection of their nominee *is* a state-imposed restriction on theirs." *Id.* at 584.

Similarly, in *Clingman v. Beaver*, 544 U.S. 581 (2005), Republican and Democratic registered voters challenged Oklahoma's restriction on their ability to remain registered as such and vote in the Libertarian Party of Oklahoma's (LPO) primary. The Court cited *Jones* and denied that this interest is a constitutionally protected one:

> Their interest is in casting a vote for a Libertarian candidate in a particular primary election, rather than in banding together with fellow citizens committed to the LPO's political goals and ideas. See *Jones*, supra, at 573–574, n. 5, 120 S.Ct. 2402 ("As for the associational 'interest' in selecting the candidate of a group to which one does not belong, that falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest").

*Id.* at 588.

The Plaintiff's contention that he is "forced to subsidize" political parties he does not support through his tax dollars is equally unavailing. The fact that primary and general elections are publicly funded does not somehow create a First Amendment interest for the Plaintiff as a taxpayer, nor does it give the Plaintiff a right to infringe upon the associational rights of others. The *Jones* Court noted: "We have recognized, of course, that States have a major role to play in structuring and

monitoring the election process, including primaries." *Jones*, 530 U.S. at 572 (citing *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986)). The Supreme Court went on to reiterate it is "too plain for argument" that "a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *Id.* at 572 (citing *American Party of Tex. v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974)). Florida requires a primary election for nomination of candidates of political parties to be held on the Tuesday 11 weeks prior to the general election. *Fla. Stat. § 100.061.* The Supervisor executes this function and funds such primaries in the same manner as general elections.

The Plaintiff is free to exercise his First Amendment rights to criticize political parties, encourage support for non-party or write-in candidates, and/or advocate for electoral reforms. However, he cannot engage this Court to judicially effectuate his political desires. In dismissing a similar suit in the Southern District of Florida, the court aptly observed: "Plaintiffs' requested relief may lie, if at all, in the democratic process, and that is a system in which, at least at this juncture, this Court will not intervene." *Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1244 (S.D. Fla. 2012).

The *Lacasa* plaintiffs sought declaratory and injunctive relief against the Miami-Dade County Supervisor of Elections to allow them to vote in the 2012 Democratic Primary for State Attorney as non-party voters. The Southern District dismissed for lack of standing, finding the non-party members did not have an associational interest in voting in the party's primary, and even "[a]ssuming *arguendo* that Plaintiffs have sufficiently alleged a First Amendment associational interest… the Court finds that the State of Florida's interests outweigh Plaintiffs' limited interest in voting in a primary of a party to which they do not belong." *Id.* at 1239. The instant case is subject to dismissal on the same grounds.

### 2. Plaintiff is not treated differently from other Florida voters in general, nor is he similarly situated to those who choose to register with a party.

The Equal Protection Clause "requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1313 (11th Cir. 2006)(quoting *Greenbriar Village, L.L.C. v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir. 2003)(per curiam)). In general, Plaintiff has the same rights as every other Florida voter. If he registers with a party, he may vote in its primary. *Fla. Stat. § 101.021.* Plaintiff does not allege otherwise.

Plaintiff's equal protection claim must fail because he is not in fact similarly situated to voters who are registered to a political party. "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *Campbell,* 434 F.3d at 1314. The Eleventh Circuit advised that "[t]o maintain th[e]

8

focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with rigor." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007).

Unlike Plaintiff, party voters have chosen to register with and have their views represented by a political party. Plaintiff, by his own admission, does not wish to associate with any political party and has not registered with one. He is therefore not similarly situated to party voters. As the *Jones* Court commented:

> In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.

*Jones*, 530 U.S. at 575. Plaintiff's interests in voting in a party's primary are not the same, and may even conflict with, those of party members.

Based on the above, Plaintiff cannot prevail as a matter of law. Plaintiff's Complaint must be dismissed with prejudice for failure to state a claim.

## B. Plaintiff lacks standing to bring this action.

In order to have standing, Plaintiff must allege "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Stalley ex re. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004)). A defendant can challenge a plaintiff's standing on a motion

to dismiss. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley*, 524 F.3d at 1232.

As previously mentioned, a comparable claim was dismissed for lack of standing by the Southern District of Florida upon a finding that "the associational interest Plaintiffs allege amounts to nothing more than a 'desire' to vote in a party primary to which one does not belong." *Lacasa*, 883 F. Supp. 2d at 1238 (citing *Jones, 530 U.S. at 573* 5). "Consequently, Plaintiffs have not established a 'legally protected interest' giving them standing before this Court. *Lujan*, 504 U.S. at 558, 112 S.Ct. 2130. Absent this necessary 'injury in fact,' there is no justiciable or cognizable 'case or controversy' before this Court, and the Court lacks jurisdiction…" *Lacasa*,883 F. Supp. 2d at 1238.

In the instant case, as in *Lacasa*, the Plaintiff desires to vote in the primary of a party to which he does not belong. Whether he does not belong to the party because he prefers another party or no party at all is immaterial. His options are to join a party and participate in selecting its candidate, or not. *See Jones*, 530 U.S. . Plaintiff does not allege that he wants to associate with a party, nor has he been prevented in any way from doing so. No party is alleged to have expressed an

10

interest in associating with Plaintiff or sought to permit him to vote in its primary. Plaintiff has no legally protected interest at stake here.

Plaintiff may argue he has standing to bring this action as a county taxpayer. However, both state and federal courts require taxpayers to allege that a legislative act violates a specific constitutional limitation on the legislature's taxing and spending power. *See e.g., Dep't of Educ. v. Lewis*, 416 So.2d 455, 459 (Fla.1982) (citing to *Flast v. Cohen*, 392 U.S. 83, 88, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), for the proposition that taxpayers have standing to challenge statute alleged to exceed specific constitutional limits on the taxing and spending power). This Court has summarized local taxpayer standing as follows:

> The law is clear that taxpayers may "invoke the interposition of a court of equity to prevent an illegal disposition of the moneys [sic] of the county [or City]." Crampton, 101 U.S. at 609. However, plaintiff has cited no authority to support a suit by a taxpayer based on "taxpayer standing" where there is no illegal expenditure of taxpayer funds or illegal use of public property. *See Valley Forge*, 454 U.S. at 479–480, 102 S.Ct. at 762–763 (no taxpayer standing due to failure to allege specific injury from taxing and spending power). The record and arguments do not indicate that any City funds were used, are being used, or will be used to promote the resolution. Because plaintiff has failed to show evidence of the misuse of municipal monies or property, he has failed to demonstrate taxpayer standing.

*Allen v. Consolidated City of Jacksonville, Fla.*, 719 F.Supp. 1532, 1535 (M.D. Fla. 1989).

Here, given the apparent lack of constitutional merit of Plaintiff's Complaint, the Plaintiff has no argument that Florida's closed primary laws exceed specific constitutional limits or that the Supervisor's expenditure of funds to implement primary elections is illegal. Since the Plaintiff has failed to

11

demonstrate that he has standing to pursue this cause of action, this Court lacks subject matter jurisdiction over this cause and the Complaint must, therefore, be dismissed with prejudice.

**C. Plaintiff has not notified the State Attorney General as required.**

Plaintiff's Complaint challenges the constitutionality of Florida's closed primary statute. Federal Rule of Civil Procedure 5.1(a)(2) provides that a party that files a pleading drawing into question the constitutionality of a state statute must promptly serve a notice of constitutional question and the pleading on the state Attorney General. The Attorney General has the right to intervene within 60 days after such notice is filed or after the court certifies the challenge, whichever is earlier. Fed. R. Civ. P. 5.1(c). The Court may reject the constitutional challenge before that time expires but may not enter a final judgment holding the statute unconstitutional. *Id.* In this case, the Complaint is subject to dismissal on the merits and for lack of standing. As provided in Rule 5.1(c), correction of this oversight should not delay the necessary dismissal.

WHEREFORE, the Supervisor requests this Court grant this Amended Motion and Dismiss the Complaint and provide any such other and further relief

as this Court deems just and proper.

Respectfully submitted,

MORGAN R. BENTLEY, ESQ.

ASHLEY E. GAILLARD, ESQ.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served to all counsel of record through the Court's electronic filing system and to the Plaintiff at 1102 Ben Franklin Drive, Unit 511, Sarasota, FL 34236 and Mpolel2@uic.edu, on this 13th day of July, 2022.

BENTLEY GOODRICH KISON, P.A.

MORGAN R. BENTLEY, ESQ.
mbentley@bgk.law
Florida Bar No. 0962287
**ASHLEY E. GAILLARD, ESQ.**
agaillard@bgk.law
Florida Bar No. 1019208
783 S. Orange Avenue, Suite 300
Sarasota, Florida 34236
Telephone: (941) 556-9030
Attorneys for Defendant, Ron Turner

13

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Defendant, RON TURNER, Sarasota Supervisor of Elections, conferred with Pro Se Plaintiff, Mihael Polelle, by phone on July 12, 2022, regarding the Supervisor's Motion to Dismiss, which was provided to Mr. Polelle by email.  Mr. Polelle opposes the relief requested in the Motion to Dismiss.

ASHLEY E. GAILLARD, ESQ.

Tab 13

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MICHAEL J. POLELLE,
    *Plaintiff*,

v.                              CASE NO: 8:22-cv-1301-SDM-AAS

CORD BYRD, in his official
capacity as Florida Secretary of State, *et al.*,
    *Defendants*.

_____/

## AMENDED[1] MOTION TO DISMISS

Defendant, Florida Secretary of State Cord Byrd ("Secretary"), moves to

dismiss this action pursuant to Rule 12(b)(1), for lack of constitutional standing or,

alternatively, pursuant to Rule 12(b)(6) for failure to state a claim.

### I.    BACKGROUND

Plaintiff is registered to vote as unaffiliated with any political party, *i.e.*, as a

voter with "No Party Affiliation." DE 1 at ¶ 9. Plaintiff however, has a "desire" to

vote in party primaries, although he does not ever allege in *which* party's primary he

would like to participate. DE 1 at ¶ 9. Plaintiff therefore challenges the "Closed

Primary Statute" in section 101.021, Florida Statutes, which entitles voters "to vote

the official primary election ballot of the political party designated in the[ir]

registration, and no other" and prohibits voters from voting "for any candidate

---

[1] Amended solely to add certificate of conferral.

running for nomination from a party other than that in which such elector is registered." Florida has had "closed primary" elections since 1913. Laws of Fla., Ch. 13-6469, § 41. In order to participate in a party's primary, a voter must simply register as a member of, or change registration to that party, no later than 29 days before the primary election. Fla. Stat. § 97.055.

Plaintiff has added the Supervisor of Elections for Sarasota County, who conducts the primary elections in Plaintiff's County, including designing and overseeing the provision of ballots to voters in accordance with the Closed Primary Statute. DE 1 at ¶ 6; *see* Fla. Stat. §§ 101.151 (prescribing ballots); 101.043(1)(a) (requiring voter id comparison to precinct register before voting); 98.461 (requiring party affiliation on the precinct register); 98.045(1) (making supervisor primarily responsible for registering voters); 98.015(3) (designating the supervisor as primarily responsible for updating registrations and acting as custodian of those registration records). The Secretary is also a defendant on the basis that he is the "chief election officer of the state" and has duties related to the Florida Voter Registration System. DE 1 at ¶ 5.

## II.    ARGUMENT

### A. Plaintiff has no constitutionally protected interest here.

Without a "legally protected interest," there is no standing and therefore "no justiciable or cognizable case or controversy" before the Court to create its necessary jurisdiction to proceed. *Lacasa v. Townsley*, 883 F.Supp.2d 1231, 1238 (S.D. Fla. 2012)

(citing and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 558 (1992)).   "[A] desire to vote in a party primary to which one does not belong" is simply *not* a "legally protected interest."  *Lacasa*, 883 F.Supp.2d at 1238 (cleaned up).  Indeed, the Supreme Court has described this "desire" as "fall[ing] far short of a constitutional right," if it "can even fairly be described as in interest," and has noted its "reject[ion] as a basis for disregarding the [party's] First Amendment right to exclude." *California Democratic Party v. Jones*, 530 U.S. 567, n.5 (2000).  The Southern District of Florida has therefore dismissed claims by non-party members seeking to vote in a party's primary for lack of standing.  *Id.* at 1238.  The Court should do the same here.

   B.  <u>Even assuming a protected interest, any injury to it is not traceable nor redressable by the Secretary.</u>

   Even if Plaintiff had a legally protected interest in participating in a party's primary as a non-member, any injury to that interest is not traceable nor redressable by the Secretary.  *See Jacobson v. Secy of State*, 974 F.3d 1236, 1253-56 (11th Cir. 2020). As the Northern District recently explained, "[u]nder *Jacobson*, "when a state law makes *one* state official responsible for the challenged action, plaintiffs lack standing to sue *another, independent* state official for that action." *Hetherington v. Lee*, No.: 3:21-cv-671-MCR-EMT, 2021 WL 6882441, *3 (N.D. Fla. July 12, 2021) (dismissing action against Secretary where FEC and State Attorneys were the enforcement authorities).

   Here, the Secretary is not an enforcement authority of the Closed Primary Statute and does not otherwise administer closed primaries in any relevant way.

Those responsibilities lie with each Supervisor of Elections who design and oversee the provision of party primary ballots to only party members. Fla. Stat. §§ 101.151; 101.043(1)(a); 98.461; 98.045(1); 98.015(3). The Secretary's general responsibilities over the voter registration system and directing and advising Supervisors in *their* duties "says nothing about whether []he possesses authority to *enforce* the complained-of provision, as the causation element of standing requires." *Jacobson v. Sec'y of State*, 974 F.3d at 1257 (cleaned up). The action should be dismissed against the Secretary even if Plaintiff had a constitutional interest, which he does not.

C. <u>Even assuming standing, the Closed Primary Statute is justified by Florida's well-recognized interests.</u>

Nevertheless, even if there was a protected interest, and injury traceable to and redressable by the Secretary, "requiring voters to register with a party prior to participating in the party's primary minimally burdens voters' associational rights" and is justified by "a State's important regulatory interests." *Clingman v. Beaver*, 544 U.S. 581, 592-93 (2005) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. at 358); *Rosario v. Rockefeller*, 410 U.S. 752, 760-62 (1973) (upholding requirement to register with a party 11 months prior to participating in that party's primary election). The "important regulatory interests" justifying the Closed Primary Statute were specifically approved in *Clingman*: preservation of political parties as viable and identifiable interest groups, enhancing parties' electioneering and party-building efforts, and guarding against party raiding – the "the organized switching of blocs of voters from

one party to another in order to manipulate the outcome of the other party's primary election." *Id.* at 593-97.  And in *Lacasa*, the Southern District alternatively upheld Florida's closed primary system against attack by non-party members on the basis of these very same interests.  *Lacasa*, 883 F.Supp.2d at 1239-41.

As the Supreme Court has said, after examining several of its own cases on the subject, "[t]he voter who feels himself disenfranchised should simply join the party" because a "nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." *California Democratic Party*, 530 U.S. at 583-84; *see also id.* at 572-77. The Complaint should therefore be dismissed for failure to state a claim, even if there were standing (which there is not).

WHEREFORE, the Secretary respectfully requests the Court grant this Motion and dismiss the Complaint.

July 14, 2022                                        Respectfully submitted,

                                                    */s/ Ashley E. Davis*
                                                    ASHLEY E. DAVIS (FBN 48032)
                                                    *Deputy General Counsel*
                                                    ashley.davis@dos.myflorida.com
                                                    stephanie.buse@dos.myflorida.com
                                                    FLORIDA DEPARTMENT OF STATE
                                                    R.A. Gray Building, Suite 100
                                                    500 South Bronough Street
                                                    Tallahassee, Florida 32399-0250
                                                    Phone: (850) 245-6536
                                                    Fax: (850) 245-6127

                                                    *Counsel for Secretary of State*

## Local rule 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I conferred with *pro se* Plaintiff Polelle via telephone on July 13, 2022, in a good faith effort to resolve this motion, which was provided via email to Mr. Polelle.  Mr. Polelle opposes the relief requested herein.

*/s/ Ashley E. Davis*
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system and to *pro se* Plaintiff at Mpolel2@uic.edu (to which he has consented to receive service) on this 14th day of July 2022.

*/s/ Ashley E. Davis*
Attorney

Tab 14

# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

MICHAEL J. POLELLE

     Plaintiff

     V.

     Defendants

CORD BYRD, solely in his official

capacity as Florida Secretary of State

and

                     CASE NO.  8:22-CV-1301-SDM-AAS

RON TURNER, solely in his official

Capacity as Supervisor of Elections

for Sarasota County

_____

1

**PLAINTIFF'S RESPONSE TO THE AMENDED MOTION TO DISMISS BY DEFENDANT, CORD BYRD, FLORIDA SECRETARY OF STATE, AND THE MOTION TO DISMISS BY DEFENDANT RON TURNER,   SUPERVISOR OF ELECTIONS FOR SARASOTA COUNTY**

## I.  PLAINTIFF HAS STANDING TO ASSERT HIS CONSTITUTIONAL CLAIMS

In a case upholding the standing of physicians to challenge a law inhibiting their First Amendment right of free speech, the Eleventh Circuit confirmed that Article III of the Constitution requires the plaintiff to incur an injury-in-fact or be threatened with a concrete and particularized injury-in-fact that is fairly traceable to the alleged action of the defendant and is likely to be redressed by a favorable decision. *Wollschlaeger v. Governor, State of Florida,* 843 F.3d 1293, 1303-04 (11th Cir.2017).A. LOCAL

### A. TAXPAYER STANDING

As alleged in his First Claim for Relief in ¶¶ 12-16 of his Complaint (p.2), Plaintiff pays an annual ad valorem property tax into a General Fund of the Sarasota County Commission from which the Defendant, Ron Turner, withdraws funds to finance primary elections excluding Plaintiff solely because of his political decision to register as a voter with "No Party Affiliation." In 2020 Defendant, Ron Turner, spent $752, 307 to hold the Presidential Primary and $1,000,043.33 for other primaries from which Plaintiff was excluded because of his principled political choice to register without party affiliation. (allegation of ¶ 14 of First Claim for Relief in Complaint).

Although federal and state taxpayers generally lack standing in federal court to challenge federal or state expenditures, taxpayer standing does exist to sue municipal corporations for the illegal expenditure of local funds, as acknowledged in *Daimlerchrysler Corp. v. Cuno, 547 U.S. 332 (2006). "The Frothingham* Court noted with approval the standing of municipal residents to enjoin the 'illegal use of the money of a municipal corporation,' relying on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general person taxpayer suits." *Id.* at 349

In addition, Plaintiff urges taxpayer standing based on a First Amendment exception to the general rule disallowing standing for federal and state taxpayers who challenge illegal federal or state expenditures. The Court in *Flast v. Cohen*, 392 U.S. 83 (1968) allowed standing to  federal taxpayers challenging federal legislation financing the purchase of secular textbooks for religious school on the basis of the Establishment Clause and the Free Exercise Clause of the First Amendment. "Whether the Constitution contains other specific limitations on spending] can only be determined in the context of future cases." *Id.* at 105.

Plaintiffs submits that it would betray the reasoning of *Flast* to conclude that the singular importance of the First Amendment only applies in standing cases involving the Establishment Clause and Free Exercise Clause and not the Freedom of Speech Clause alleged by Plaintiff in his Complaint. Splitting First Amendment rights for purposes of standing or lack of standing is akin to King Solomon's shrewd proposal to split the baby

with a sword to determine the true mother who shrank in horror at the suggestion while the false mother urged the splitting.

## B. INJURY-IN-FACT

Defendants mischaracterize Plaintiff's injury-in-fact by claiming he has only a "desire" to vote in party primaries.  Plaintiff alleges in ¶ 9 of his Complaint (p.4) that "Defendants have prohibited him from voting in any party primary by enforcement of § 101.021, Fla. Stat. (2021) [section number mistyped as § 101.102 in filed copy of Complaint]." An actual arrest, prosecution, or other enforcement action is not required for Article III standing. Threatened or imminent enforcement of the law will suffice.  The court in *Wollschlaeger v. Governor, State of Florida*, 848 F.3d 1293, 1304 (11th Cir. 2017) stated clearly:

When an individual is subject to [the threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S.Ct. at 2342 (citing other Supreme Court cases as examples). A person "can] bring a pre-enforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]' " *Id.* (citation omitted). *See also ACLU v. The Florida Bar, 999 F.2d 1486, 1494 & n.13 (11th Cir. 1993)* (explaining that a plaintiff must have an objectively reasonable belief about the likelihood of disciplinary action).

Although he is prepared to do, it would be an exercise in futility to require Plaintiff to attempt to crash a party primary election in Florida, such as the one scheduled for August 23, 2022. by refusing to change his voter affiliation from "No Party Affiliation" to affiliation with a political party and yet demanding to vote in that primary

at the risk of being ejected from the polling place or arrested. The law of standing does not require him to violate or attempt a violation of Florida's election law before challenging it in the courts.

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (intent to engage in political speech sufficient for standing) the Supreme Court explained that where an individual is threatened with an enforcement action for asserting a right, an actual enforcement action against that individual is not required.  "A Plaintiff satisfies the injury-in-fact requirement by alleging an intention to engage in a course of conduct affected with a constitutional interest but proscribed by statute." *Id.* at. 159.  Defendant does not deny that Florida's "Closed Primary" provision in § 101.021, Fla. Stat. (2021) effectively prohibits the Plaintiff, who is registered to vote with "No Party Affiliation," from voting in any party primary so long as he holds fast to his political conviction of non-party affiliation.

The Defendant's assertion that there is no Injury-in-fact from the prohibition of §101.021 because Plaintiff can "simply" register as a member of a party 29 days before a primary election. This misses the central issue of Plaintiff's Complaint.  Plaintiff's sincere and determined conviction to remain politically unaffiliated with any party is at the heart of a fundamental right accorded every American to remain unaffiliated with any governmental effort to compel association with a political or religious belief. *West Virginia State Board of Educ. v. Barnette,* 319 U.S. 624, 642 ( 1943), ("If there is any fixed star in our constitutional constellation, it is that no official, high or mighty, can

proscribe what shall be orthodox in matters of politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.")

As a matter of constitutional right and conscience, Plaintiff cannot "simply" choose a party primary in which to vote. To argue Plaintiff can avoid the very issue he is trying to raise in court by merely voting in a party primary is equivalent to asking an atheist to swear membership in any organized religion of his or her choice, in order to vote in a government-operated and government-subsidized primary. But the Supreme Court has clearly ruled that government may not inhibit political belief and association through the coercive conditioning of core First Amendment rights on the threat of withholding some benefit in the form of employment or otherwise. *Elrod v. Burns, 427 U.S. 347 (1976).*

If Plaintiff were to lie about his mental state by "simply" changing his voter registration from "No Party Affiliation" to "Republican" or "Democrat," he would risk running afoul of Florida laws which criminally punish fraudulent registration. The Supervisor of Elections is authorized to investigate fraudulent registrations and illegal voting. §104.42, Fla. Stat. (2021). Furthermore, §104.011, Fla. Stat. (2021) makes it a third-class felony to willfully swear or affirm falsely by oath or affirmation in submitting voter registration information and §104.15, Fla. Stat. (2021) makes it a third-class felony for any person, who knows he is unqualified, to vote in any election.

The court in *Lacasa v. Townsley, 883 F. Supp. 2d 1231, 1235, 1238 (S.D. Fla. 2012*, cited by Defendant, admitted: "The present litigation presents a unique factual

scenario that certainly has not been considered by the Supreme Court." *Id* at 1235. Nonetheless, The *Lacasa* court relied on *California Democratic Party v. Jones*, 530 U.S. 567, n 5 (2000) to find a lack of standing , even though standing was not an issue before the Supreme Court in the *California Democratic Party* case. The *Lacasa* court appears to have conflated issues of standing with issues related to the merits.

In that short footnote 5, Justice Scalia was not discussing the issue of standing but the weak relationship, if any, between a party and all voters, including members of opposition parties as well as independent voters, are allowed to vote in a "blanket primary" to select the party's candidate for the general election. Footnote 5 did not even mention standing for good reason. The Democratic Party, not non-party voters desiring to vote in its primaries, had brought the case to successfully challenge California's "blanket primary" system as a violation of the party's right not to have non-party members decide its nominees for the general election. That scenario is not the case before this Court.

Nowhere in his Complaint does Plaintiff  suggest the adoption of a "blanket primary" in which voters belonging to an opposing party are allowed to participate in another party's primary. If Florida's closed-primary system is declared unconstitutional, the Florida legislature is free to adopt other primary solutions left open by the Supreme Court that avoid the constitutional issues raised by Plaintiff in his Complaint and yet respect the constitutional rights of political parties.

C. TRACEABILITY AND REDRESSABILITY

In his Amended Motion to Dismiss (p.3), Defendant Boyd's contention is that even if there were an injury-in-fact, any injury is not traceable to or redressable by the Florida Secretary State.  Plaintiff's Complaint alleges in ¶ 5 of his Complaint (pp.5-6), and Florida law confirms, that aside from other relevant duties as chief election officer of the state, the Florida Secretary of State must "provide written direction and opinions to the supervisors of election on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." §97.012 (16), Fla. Stat. (2021). More than that, the Florida Secretary of State must bring and maintain lawsuits "to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to chapters 97 through 102 and 205 or to enforce compliance with any rule of the Department of State adopted to interpret or implement any of these chapters." *§97.012 (14), Fla. Stat. (2021).*

As is axiomatic in tort law, there can be more than one cause that contributes to an injury. Where two defendants are jointly and severally responsible each cannot escape liability by saying that but for the actions of the other the harm would not have occurred. This principle is implied in the way *Loggerhead Turtle v. v. County Council of Volusia County*, 148 F.3d 1231 (11th Cir.1998) handled the issue of standing. Sea turtles had standing for a county's refusal to ban beach-driving and artificial lights despite the county's claim that the current regulations in four municipalities did not permit the regulation sought.

The court acknowledged that for standing purposes an injury cannot be the result of an independent third-party action but also said: "On the other hand, standing is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties (citation omitted)." *Id* at 1247.  The failure to regulate in *Loggerhead Turtle* did not defeat the traceability and redressability required for standing any more than would the failure to regulate defeat standing as regards the Secretary of State. "We agree with the Turtles that they have shown a sufficient causal connection to seek to hold Volusia County liable for 'harmfully' inadequate regulation of artificial lighting in the municipalities of Daytona Beach, Dayton Beach Shores, Ormond Beach and New Smyrna Beach." *Id.*at1249.

*Jacobson v. Sec'y of State,* 974 F.3d 1236, 1242 (11th Cir. 2020), cited by Defendant Boyd in his Amended Motion to Dismiss (P.3), is distinguishable. Voters and organizations supporting the Democratic Party sued the Florida Secretary of State for declaratory and injunctive relief in a challenge to the order in which candidates were placed on Florida ballots. The most obvious distinction is that the hypothetical and conjectural nature of how ballot positions affect the political fortunes of the Democratic and Republican parties is simply not a concrete and demonstrable injury-in-fact.  The lack of injury-in-fact explains the decision in itself. Being barred by law from voting in a primary his taxes help fund is an actual and concrete harm by contrast. Plaintiff will not be allowed to vote. No uncertainty exists as to that fact.  The court's further conclusion

that even if there were an injury-in-fact, it was not traceable to or redressable by the Secretary of State is not necessary to explain the lack of standing in that case.

Jacobson's dictum about the absence of traceability and redressability by the Secretary of State  do not apply here because the court gave as an independent reason for its decision the fact that no Supervisor of Elections was named a party. "The voters and organizations' failure to join the Supervisors as defendants is an independent reason that they lack standing to maintain this action." *Jacobsen* at 1253. The Plaintiff in this case, on the other hand, has sued and served the Sarasota Supervisor of Elections as well as the Florida Secretary of State.  To shore up its standing reasoning even further, the court in *Jacobson* invoked the political question doctrine to rule against the claim on the ground that no judicial standards existed a to determine a fair ballot position. *Id.*at 1241. The political question doctrine has no application to this case.

 Other decisions have recognized that assuming an injury-in-fact, both the Secretary of State and Supervisors of Elections may have traceable and redressable duties under the Florida Election Code. In a consolidated action to challenge Florida's election procedures the Northern District  held that certain injuries were fairly traceable to and redressable by both the Florida Secretary of State and Supervisors of Election. *Nielsen v. DeSantis*, 469 F.Supp.3d 1261, 1267 (N.D.Fla. 2020) ("An injury is traceable to a defendant if the defendant has a role in implementing or enforcing the provision that causes the injury. For most of the provisions at issue, this includes both the Secretary of State and the Supervisors of Elections."). *See also, e.g., Florida State Conference of the*

*NAACP v. Lee*, 566 F.Supp.3d 1262, 1263-64 (N.D.Fla.2021) (drop box restriction traceable to and redressable by Florida Secretary of State and Supervisors of Election) and *League of Women Voters of Florida, Inc. v. Lee*, 2022WL 969538 at 15 (N.D.Fla. 2022) (rejection of claim by Secretary of State that intentional injury-in-fact must be redressed by Supervisors of Election in each of Florida's 67 counties).

## II. PLAINTIFF HAS STATED A CLAIM ON WHICH RELIEF COULD BE GRANTED

### A. COMPELLED SPEECH AND ASSOCIATION

Defendant Boyd notes that Florida has had "closed primaries" since 1913 (Def. Amended Motion to Dismiss, p. 2). But another key background fact is that the First Amendment was not even applied to the states until *Gitlow v. New York*, 268 U.S. 652 (1927). Over the years the number of states with Florida's hard-core closed-primary system has decreased to only 11 states, including Florida. *World Population Review*, https : // www.worldpopulationreview .com/state-rankings/closed primary states. Click first hyperlink "Closed Primary States 2022" from dropdown (New Jersey, Delaware, Kansas Florida, Kentucky, Nevada, New Mexico, New York, Oregon, Pennsylvania, and Wyoming) (last visited July 16, 2022). Maine is also included in the *Word Population Review* study but Maine more recently abolished its closed-primary system. Starting in 2024, Maine will allow voters registered as unaffiliated to participate in party primaries while not allowing Democrats and Republicans to vote in the other party's primaries.

David Meyers, "Maine joins list of states with open primaries," *Fulcrum*, https:// www. thefulcrum.us/Elections/Voting/maine-open primaries (last visited July 16, 2022).

The growing tension between closed primaries and the Constitution has finally come to a breaking point  in *Janus v. AFSCME, 585 U.S.__ ,138 S.Ct. 2448 (2018).* In this landmark decision the Supreme Court overruled its prior decision and struck down an Illinois law requiring a non-union member to pay  agency fees to a union for collective bargaining services because the law violated the First Amendment by impermissibly compelling the non-union member's speech and association.  *See McDonald v. Longley*, 4 F. 4th 229 (5th Cir. 2021) (*Janus* holding extended beyond collective bargaining to integrated bar fees).

"Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id.*at *2463.*  "Because the subsidization of private speech impinges First Amendment rights it cannot be casually allowed."*Id.*at 2464. Likewise, Plaintiff is being pressured to subsidize speech and support political associations when he refuses on principle to vote in party primaries by deceptively claiming a party membership which he shuns, but yet is required to support through his taxes.

Furthermore, just as the "free rider" justification was insufficient in *Janus,* any alleged Florida interest in preventing "raiding" of a party's primaries by political opponents is even more beside the point because Plaintiff's Complaint only asks that

voters registered with "No Political Party" be allowed to vote in primaries. Without reaching whether "strict scrutiny" applied, the Court struck down the Illinois law with the use of "exacting scrutiny" and rejected a rationality test for evaluating the state' interest. Not even the state's interest in labor peace, avoiding "free riders" and other concerns was sufficient to withstand this level of scrutiny. *Id.*at 2465.

B. IMPOSITION OF AN UNCONSTITUTIONAL CONDITION ON VOTING.

In *Rutan v. Republican Party of Illinois*,497 U.S. 62, 72  (1990) the Supreme Court held that it violated the First Amendment rights of certain public employees for a governmental official to base promotions, transfers, and other employment decisions on affiliation with a political party or support for that party where no vital governmental interest was involved. The opinion noted that for at least a quarter century the Court has made it clear that even persons who have no right to a governmental benefit may not be denied that benefit  by infringing a constitutionally protected interest, such as freedom of speech. "For if the government could deny a benefit to person because of his constitutionally protected speech or association, his exercise of this freedom would in effect be penalized or inhibited.  This would allow the government to 'produce a result which (it) could not command directly. "Id.at72, *citing, Speiser v. Randall*, 357 U.S. 513, 526 [parallel citations omitted]." *Accord*, *Elrod v. Burns,* 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) (dismissal for different political beliefs and associations)

The Florida closed primary places an unconstitutional condition on the right of Plaintiff  to exercise his First Amendment rights by offering him the benefit of voting in a

primary system, funded in part by him and some other 3 million Florida voters officially registered as not politically affiliated, if only he will forsake his political beliefs and rights of association by changing his registration from a person with "No Party Affiliation" to one with a party affiliation.

His choice is that between a constitutionally impermissible rock and hard place. It is the classic Catch-22. Either sacrifice your refusal to support the party system and betray your political beliefs by outward deception in changing your public voting registration, or else forfeit your fundamental right to vote in a primary and have an equal voice with partisan voters who will otherwise determine the ultimate candidates and leave you with a greatly diminished choice in the general election.

Neither Defendant has denied the allegations of Plaintiff's Second Claim for Relief that the right to vote in a primary election and the right to vote in a general election have become essentially part of an integrated and unified electoral system in Florida. The conditioning of his right to vote in a primary is, therefore, like conditioning his right to vote in a general election. This is especially so since the vote in a primary is crucial to determining who the candidates will be in a general election. At the very least, Plaintiff submits this is not an issue to be determined at this premature point in the case. The burden is on the State of Florida to prove it has vital interests that survive, at the very least, the "exacting scrutiny" established by the Supreme Court.

C. PLAINTIFF'S POSITION IS CONSISENT WITH SUPREME COURT OPINIONS

BALANCING RIGHTS OF POLITICAL PARTIES AND FIRST AMENDMENT

RIGHTS OF VOTERS.

Plaintiff's Complaint is not barred as a matter of law by the Supreme Court

decisions, cited by Defendants, of *California Democratic Party v. Jones*, 530 U.S.567

(2000) and *Clingman v. Beaver, 544 U.S. 581 (2005).* Plaintiff does not ask in the

Complaint for a specific type of replacement for the Florida closed-primary and would

prefer to leave that to the Florida legislature. All plaintiff contends is that the current

version of the Florida close-primary is unconstitutional. The following case discussion

indicated how the Plaintiff's First Amendment rights can be compatible with the First

Amendment rights of political parties.

In California *Democratic Party, 530 U.S. 567,581 (2000)* the Supreme Court

struck down Proposition 198 as a violation of the associational rights of political parties.

California's had changed from closed primaries to "blanket" primaries. The Court

explained that in "blanket" primaries each voter's ballot lists every candidate regardless

of party affiliation and permits voters to choose freely among them. The one with the

most votes became the party's nominee in the general election. The "blanket" primary

was unconstitutional only because it eviscerated the First Amendment right of a party to

pick its own nominees. The decision did not condemn other forms of "open" primaries

which allow political parties to determine their own nominees before opening a primary

to all voters.

15

In fact, the Supreme Court in *Washington State Grange v. Washington State Republican Party, 557 U.S. 442 (2008)* upheld as constitutional a "modified blanket" primary which avoided the fatal flaw of having all voters decide a party's nominee. "Whether parties nominate their own candidates outside the state-run primary is simply irrelevant. In fact parties may now nominate candidates by whatever mechanism they choose because I-872 repealed Washington's prior regulations governing party nominations." *Id.* at 453. The Court said it was "sheer speculation" that voters would think candidates running in a primary with party identification were the nominees of the party. *Id.* at 454.

Furthermore, the Supreme Court in *Clingman v. Beaver*, 544 U.S. 581, 587 (2005), has endorsed Oklahoma's semi-closed primary system in which a political party may allow voters registered as Independent to vote in its primary but not voters affiliated with another political party. The Libertarian Party objected on the basis that it wished to allow all voters, even those from other parties, to vote in its primaries. The court rejected the attack on Oklahoma's semi-closed system with these words:

In *Tashjian,* this Court struck down, as inconsistent with the First Amendment, a closed primary system that prevented a political party from inviting Independent voters to vote in the party's primary. 479 U.S., at 225, 107 S.Ct. 544. This case presents a question that *Tashjian* left open: whether a State may prevent a political party from inviting registered voters of other parties to vote in its primary. *Id.,* at 224, n. 13, 107 S.Ct. 544. As *Tashjian* acknowledged, opening a party's primary "to all voters, including members of other parties, ... raise[s] a different combination of considerations." *Ibid.* We are persuaded that any burden Oklahoma's semiclosed primary imposes is minor and justified by legitimate state interests.

Far from dooming Plaintiff's Complaint at the outset, these cases actually provide a constitutional blueprint for the replacement of the Florida closed primary system. If anything, *Tashjian v. Republican Party of Connecticut*, 479 U.S.208 (1986) provides another reason why 101.021, Fla. Stat. (2021) is unconstitutional. That statutory provision flatly makes it unlawful for any voter to cast a ballot in any primary other than the primary of the party with which the voter is registered. Contrary to the holding of *Tashjian*, a political party in Florida would not be allowed to open up its primary to voters not affiliated with a party even if the political party wanted to.

D. PLAINTIFF AND OTHER VOTERS REGISTERED WITH "NO PARTY AFFILIATION" ARE TREATED DIFFERENTLY FROM OTHER QUALIFIED VOTERS WITH WHOM THEY ARE SIMILARLY SITUATED IN EVERYTHING BUT THE   DISCRIMINATION BECAUSE OF THEIR  POLITICS.

Defendant Turner's denial of any equal-protection problem occurs because he assumes all Florida voters are treated the same. "In general, Plaintiff has the same rights as every other Florida voter. If he registers with a party, he may vote in its primary. 101.021. Plaintiff does not allege otherwise (Def. Turner's Motion to Dismiss, p.8*).*" But that observation …"If he registers with a party" …misses the central issue of this case. Plaintiff acknowledges he could vote in a primary but that is not the real issue.

The issue is whether a state can require a taxpayer and independent voter to vote in party primary in order to be placed on an equal basis with other voters. Not-politically-affiliated voters are similarly situated to party voters in that they are all voters but yet are

invidiously discriminated against because of the denial of the right to vote in a government-funded and government-supervised primary system that operates only for the benefit of those who choose to associate with those parties and express adherence to them. See, e.g., the original voter-apportionment case of *Baker v. Carr*, 369 U.S. 186, 207 (1962) ("These appellants seek relief in order to protect or vindicate an interest of their own and of those similarly situated."). Plaintiff and the other Florida independents who have officially registered as voters with "No Party Affiliation" are similarly situated to other qualified voters but they are otherwise handicapped and inhibited in the full exercise of their constitutional rights.

*Griffin Indus, Inc. v. Irvin,* 496 F.3d 1189, 1207 (11th Cir. 2007) is not relevant to Plaintiff's case because that case involved a chicken processor claiming a "class of one" for being subjected to more rigorous environmental enforcement than his competitors. *The Griffin* court noted that the plaintiff in that case failed to meet the second prong of a "class of one" claim because the enforcement was "rational." Plaintiff in the base before this court is not a "class of one" but part of the three- million- plus voters whose votes are suppressed in Florida primaries. Moreover, Plaintiff is making a claim based on the First Amendment which requires a strict, exacting, or heightened scrutiny and not merely some rational justification.

## III. PLAINTIFF HAS COMPLIED WITH F.R. CIV.P. 5.1(a) (2) BY NOTIFIYING STATE ATTORNEY GENERAL AS REQUIRED.

In compliance with F.R.CIV.P. 5.1(a) (2), Plaintiff, on July 14, 2022, deposited an envelope by certified mail in the U.S. Post Office at 1661 Ringley Boulevard in Sarasota, Florida, 34236, on or about 1:30 p.m. ,with the same addressed to the Office of the Florida Attorney General, PL-01 The Capitol, Tallahassee, Florida, 32399-1050 and containing the notice of constitutional questions raised by Plaintiff as to the state statute and state constitutional provision referred to in Plaintiff's Complaint, as well as copy of the Complaint. Sixty days after this notice is filed, or after this Court sets a later time, whichever is earlier, the Attorney General may intervene. *Id.*at (c).   "A party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or other defense that is otherwise timely asserted." *Id*, at (d).

WHEREFORE, the Plaintiff requests this Court to deny the Amended Motion to Dismiss of Defendant Cord Boyd, Florida Secretary of State and to deny the Motion to Dismiss of Ron Turner, Supervisor of Elections for Sarasota County.

Respectfully submitted,

_____

MICHAEL J. POLELLE

PLAINTIFF PRO SE

19

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all

counsel of record by mailing a copy to Ashley E. Davis, Deputy General Counsel of the

Florida Department of State, R.A. Gray Building, Suite 100, 500 South Bronough Street,

Tallahassee, Florida 32399-0230 and emailing a copy to her email address at

Ashley.Davis@dos.myflorida.com and by mailing a copy to Ashley E. Gaillard, Esq.,

Bentley Goodrich Kison, 783 S. Orange Avenue, Suite 300, Sarasota, Florida, 34236 and

by emailing a copy to her email address at agaillard@bgk.law

_____

MICHAEL J. POLELLE

PLAINTIFF PRO SE

1102 Ben Franklin Drive

Unit 511

Sarasota, Florida  34236

Tel: (941) 388-1840

.

_____

Tab 22

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL J. POLELLE,

     Plaintiff,

v.                            CASE NO. 8:22-cv-1301-SDM-AAS

CORD BYRD and RON TUNER,

     Defendants.

_____/

## ORDER

Appearing *pro se*, Michael J. Polelle sues (Doc. 1) Cord Byrd, the Florida Secretary of State, and Ron Turner, the Supervisor of Elections for Sarasota County. When registering to vote in Florida, Polelle reported "No Party Affiliation." (Doc. 1 at 4) Under Section 101.021, Florida Statutes, "a qualified elector is entitled to vote the official primary election ballot of the political party designated in the elector's registration, and no other." Thus, an elector registered without party affiliation may not vote in any partisan primary election. Polelle argues (Doc. 1 at 5–10) that by preventing his voting in a "state-supported" primary election in accord with this statute, the defendants violate Polelle's rights under the First and Fourteenth Amendments to the United States Constitution. Byrd and Turner each move (Docs. 12, 13) to dismiss and argue that Polelle lacks standing and fails to state a claim.

As a preliminary matter, Polelle lacks standing to maintain this action. Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Polelle must suffer "an

invasion of a legally protected interest" to have standing.  Polelle's "associational 'interest' in selecting the candidate of a group to which [he] does not belong[] falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." *California Democratic Party v. Jones*, 530 U.S. 567, 573 n.5 (2000).  The statute's frustration of Polelle's "desire" to vote in a partisan primary is insufficient for standing.  *See Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1238 (S.D. Fla. 2012) (Zloch, J.) (denying standing for, and dismissing the complaint of, two registered electors — one registered without party affiliation and one registered as a member of the Republican party — who "desire[d]" to vote in a Democrat primary election without first registering as a member of the Democrat party). [1]

Further, *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), and *Jones* confirm that the associational right "to both expand and limit the persons" entitled to vote in a party's primary is conferred on the political party — not on a voter. *Osburn v. Cox*, 369 F.3d 1283, 1287–88 (11th Cir. 2004) (concluding that the Supreme Court has decided "no case[] in which individual plaintiffs alone" asserted a right to vote in a party's primary and that "the case law weighs against an individual's right to assert such a claim").  Because no political party joins this action or otherwise objects to Section 101.021, this action warrants dismissal for lack of standing.

---

[1] Polelle's argument for standing as a taxpayer is equally unavailing. Polelle acknowledges that "taxpayers generally lack standing in federal court to challenge federal or state expenditures," but Polelle "urges taxpayer standing based on a First Amendment exception to the general rule." (Doc. 14 at 3) This exception is inapplicable because Polelle fails to demonstrate that the government's payment of money to support the primary election violates the First Amendment. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 593 (2007).

Even if Polelle had standing, he fails to state a claim. *Jones*, 530 U.S. at 581, rejects the "adulterat[ion of a political party's] candidate-selection process . . . by opening [the process ] to persons wholly unaffiliated with the [political] party." *Jones*, 530 U.S. at 584, instructs a frustrated elector with no political affiliation — such as Polelle — to "simply join the [political] party." And until twenty-nine days before a primary election Polelle may change his registration to a different political party and may vote in the primary election for his new political party. "That may put him to a hard choice, but it is not a state-imposed restriction upon his freedom of association, whereas compelling party members to accept his selection of their nominee is a state-imposed restriction upon theirs." *Jones*, 530 U.S. at 584.

Under *Jones*, Polelle retains the same choice as every other Florida elector. He may affiliate with a political party and vote in that party's primary or he may register without party affiliation. But Polelle may not burden another's First Amendment freedom of association by voting in a party primary without affiliating with that party. For these reasons and others stated in the motions, the motions (Docs. 12, 13) to dismiss are **GRANTED**, and this action is **DISMISSED**.

ORDERED in Tampa, Florida, on November 3, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 3 -

# Tab 23

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

MICHAEL J. POLELLE

      Plaintiff

       v.                      CASE NO.  8:22-cv-1301-SDM-AAS

CORD BYRD, solely in his official

capacity as Florida Secretary of State

and RON TURNER, solely in his

official capacity as Supervisor of

Elections for Sarasota County_____/

## NOTICE OF APPEAL

    Michael J. Polelle, appearing as Plaintiff pro se in this action, hereby appeals to the United States Court of Appeals for the Eleventh Circuit  from the final order entered by the United States District Court on November 3, 2022 granting the Defendants' Motions to Dismiss and dismissing this action filed by Plaintiff.

 

                                    _Michael J. Polelle_

                                    MICHAEL J. POLELLE

                                    Plaintiff Pro Se

                                    1102 Ben Franklin Drive

                                    Unit 511

                                    Sarasota, Florida  34236

                                    Tel: (941) 388-1840

                                    Email: mpolel2@uic.edu

TPA - 67642
$505.00

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all

counsel of record on the 30th day of November 2022, by mailing through the United

States Postal Service a copy to Ashley E. Davis, Deputy General Counsel of the Florida

Department of State, R.A. Gray Building, Suite 100, 500 S. Bronough Street, Suite 100,

Tallahassee, Florida 32399-0250, a copy to Ashley E. Gaillard, Esq., Bentley Goodrich

Kison, 783 S. Orange Avenue, Sarasota, Florida, 34236, and a copy to Morgan R.

Bentley, Bentley and Bruning, PA, 783 S. Orange Avenue, Suite 300, Sarasota, Florida

34236, as well as by sending courtesy emails to all counsel of record.

MICHAEL J. POLELLE
Plaintiff Pro Se
1102 Ben Franklin Drive
Unit 511
Sarasota, Florida 34236
Tel: (941) 388-1840
Email: mpolel2@uic.edu

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of March, 2023, a true copy of the foregoing was served via transmission of a Notice of Electronic Filing through the Court's CM/ECF system to all counsel of record and was emailed to *pro se* Appellant, who has consented to service via email, at mpolel2@uic.edu. I further certify that the foregoing was sent to a print shop, from which seven paper copies will be sent to the Clerk via first-class mail.


*/s/ Ashley E. Davis*
ATTORNEY